**UNITED STATES of America, Petitioner-Appellee,**

v.

**Gerald L. DAVEY, as President of Credit Data Corporation, Respondent-Appellant.**

**No. 757, Docket 34530.**

United States Court of Appeals, Second Circuit.

Argued May 6, 1970.

Decided May 14, 1970.

Yale L. Rosenberg, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, and Brian J. Gallagher, Asst. U. S. Atty., on the brief), for petitioner-appellee.

F. W. H. Adams, New York City (Satterlee, Warfield & Stephens and James M. Marx, New York City, on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON, District Judge.*

* Sitting by designation.

LUMBARD, Chief Judge:

Gerald Davey, as President of Credit Data Corporation ("Credit Data") appeals from an order of Judge Ryan granting the enforcement of a summons of the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. §§ 7602 and 7402(b),[1] and ordering that Credit Data supply the information requested upon payment of a fee of not more than 75¢ each for a report or reports. Davey challenged the summary nature of the proceeding and requested a full hearing including discovery on the issues of law raised by his affidavits. We remand for a brief and summary hearing by the district court limited to the question of what is a fair amount of compensation to be paid by the IRS to Credit Data for the reports.

On all other points we affirm the order of the district court.

On April 6, 1967, Louis Avitabile was interviewed by a Special Agent of the IRS and more than 14 months later, on June 10, 1968, a summons was issued to Davey requiring him to appear as a witness and to produce all credit information relative to Louis and Emma Avitabile.[2] On August 12, 1968, Davey appeared but declined to testify. Almost 11 months later, July 14, 1969, this proceeding was commenced by an order to show cause, supported by affidavits of three IRS agents and an Assistant United States Attorney. Judge Ryan's endorsement denying the relief sought by Davey was filed on October 31, 1969, and an order was filed December 30,

---

1. I.R.C.1954 § 7602, 26 U.S.C. § 7602

§ 7602. *Examination of books and witnesses*

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

I.R.C.1954, § 7402(b), 26 U.S.C. § 7402(b)

(b) *To enforce summons.*—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

2. The summons dated June 10, 1968 required:

All credit information relative to Louis and Emma Avitabile, 66 Eighth Street, New Rochelle, N. Y., setting forth information concerning credit extended by The Chemical Bank New York Trust Company and any other information contained in the files and records of your company concerning any requests for credit information on the taxpayers, Louis Avitabile and/or Emma Avitabile made by any of your subscribers or nonsubscribers, including Chemical Bank New York Trust Company during the years 1963 to 1966, inclusive; and any information that you may have in your records or files regarding any other loans or credits extended to the taxpayers Louis Avitabile and/or Emma Avitabile by any of your subscribers or nonsubscribers during the years 1963 to 1966, inclusive.

The summons dated January 22, 1968 required:

All credit information relative to Louis & Emma Avitabile, 66—8th Street, New Rochelle, N. Y., setting forth information concerning credit extended by the Chemical Bank New York Trust Company and any other subscribers during the years 1963 to 1966, inclusive.

1969. This appeal is taken pursuant to a certificate granted by this court under 28 U.S.C. § 1292(b) on January 23, 1970.

Appellant is President of Credit Data, a large credit organization. Credit Data produces consumer credit reports for subscribers, and by virtue of its large computer network and retrieval systems is able to produce credit information for its subscribers on any of approximately 20 million residents of the metropolitan areas of New York City, Los Angeles, and San Francisco in only two minutes time. Subscribers consist of almost all the banks in the New York City area and large department and retail stores, as well as loan and finance companies. The service provided by Credit Data is a valuable one, but the subscribers pay only a nominal fee for each separate report on a consumer. In return for this service, they turn over their entire credit information and sources to Credit Data, each subscriber thereby gaining the use of the information gathered by other sources. In addition, information digested from public sources is fed into Credit Data's computer. In effect, therefore, Credit Data is a large central depository for credit information, and the IRS, rather than being forced to go from bank to bank to secure the necessary information, merely seeks access to those technological advances to which the subscribers themselves have access.

The district court held that the IRS must be given the information sought at a fee of 75¢ per report. There is, however, much dispute as to the value of these reports and there is no indication that the district judge gave full consideration to Davey's claims that a larger sum is needed fully to compensate Credit Data for the production of the reports. Although there was evidence before the district court that subscribers in California during 1968 paid between 40¢ and 63¢ per report, these figures do not reflect any regional differentials in rates, nor any adjustments which may have been made due to increasing costs and inflation. There was also evidence that the IRS had obtained similar reports at a charge of $1.00 per report from Credit Data during 1968 and on argument it was stated that the IRS was still willing to pay that rate.

We remand for a brief and summary hearing on the narrow question of the fair value of each report which the IRS seeks to obtain. Credit Data has made extensive allegations that the use of its computer time and equipment has a value in excess of 75¢ per report. The hearing should be brief, for it was indicated at oral argument that a hearing of two days or less would be sufficient for Credit Data to submit expert testimony. The rate paid to subscribers, while some indication of value, is not conclusive, for the subscriber parts with valuable credit information in order to become entitled to use the Credit Data system. However, the IRS, which conceded at oral argument that it should pay some amount, gives no reciprocal consideration for the printed report. This factor may also be weighed by the district court. We mention these factors merely as illustrations of the areas to be considered and in no way to limit the scope of inquiry which the district court may feel is necessary in order to determine what is fair and reasonable compensation to be paid to Credit Data for supplying a report.

■ Credit Data urges that a full hearing with discovery should be ordered on several issues of law and fact, among them: (1) whether the summons is burdensome; (2) whether compliance will injure the business; (3) whether the work product of Credit Data should be protected; (4) whether the summons is vague and ambiguous; (5) whether or not Credit Data possesses the information; and (6) whether it is an unreasonable search and seizure. We reject these claims. There was ample evidence from which the district judge could find that the IRS was acting in good faith and that the summons was proper, appropriate and necessary to its investigation of the tax liability of Louis and Emma Avitabile. Foster v. United States, 265 F.2d 183 (2d Cir.), cert. de-

nied, 360 U.S. 912, 79 S.Ct. 1297, 3 L. Ed.2d 1261 (1959). The summons here is reasonable and not out of proportion to the ends sought. United States v. Harrington, 388 F.2d 520 (2d Cir. 1968). The IRS indicated that the information sought would be useful in determining the net worth of the taxpayers in order to verify taxpayers' returns for the years 1963–1966. IRS investigations had revealed that the taxpayers had obtained several loans from Chemical Bank New York Trust Company during 1964–1965, and they also learned that Chemical Bank is a subscriber to the Credit Data system. Therefore, the IRS concluded that there is a strong likelihood that Credit Data has some information concerning the taxpayers.

The government has the right to require the production of relevant information wherever it may be lodged and regardless of the form in which it is kept and the manner in which it may be retrieved, so long as it pays its reasonable share of the costs of retrieval. It is not barred from securing this information by subpoena merely because it does not make the same kind of contribution of information which is required to those who are subscribers entitled to get information upon payment of a small fee.

Although Davey claimed that he would need discovery to aid in developing facts relevant to a hearing on a reasonable fee, Davey is unable to advise us as to any matters concerning which discovery would be necessary. We must leave to the district court the matter of what, if any, discovery is necessary to develop the facts relevant to reasonable fees, consistent with an early, immediate and summary determination. As we have stated already, there was sufficient evidence for the district court to conclude that the investigation was being conducted in good faith for the purpose of determining the taxpayers' net worth and not solely for a criminal prosecution. See, In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12 (2d Cir. 1962), cert. denied, 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed. 2d 198 (1963).

We take this occasion to stress again the desirability of expediting the resolution of any question concerning the validity of subpoenas and the production of evidence in the district court as well as on the appellate level. These matters should be given precedence over other business, and, upon application, an expedited schedule for the hearing of the appeal on typewritten papers will be ordered. It is now more than two years since IRS first sought to secure this information from Credit Data, and five months since the notice of appeal was filed.

We remand for a brief, summary hearing to determine the fair value to be paid by the IRS to Credit Data for the reports sought. On all other points we affirm the order of the district court. The mandate shall issue forthwith.