UNITED STATES of America and Lloyd
W. Bruce, Special Agent of the Inter-
nal Revenue Service, Petitioners,

v.

FARMERS & MERCHANTS BANK, and
Charles Allen, Assistant Manager,
Respondents.

Civ. A. No. 74–1490–F.

United States District Court,
C. D. California.

Aug. 5, 1975.

William D. Keller, U. S. Atty., Charles
H. Magnuson, Asst. U. S. Atty., Chief,
Tax Div., Mason C. Lewis, Asst. U. S.
Atty., Los Angeles, Cal., for petitioners.

Leonard P. Baum, Beverly Hills, Cal.,
for respondents.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Respondent bank asks that the United
States be ordered to reimburse it for the
expenses incurred in complying with an
IRS summons which required production

of the bank's records of transactions by several of its customers. The facts are as follows.

1. On November 27, 1973, an agent of the Internal Revenue Service served a summons on the assistant manager of the bank, demanding production of various books, records, and papers of customers of the bank.

2. Respondents appeared on the date set forth in the summons, December 10, 1973, but did not supply the requested materials.

3. On May 30, 1974, the United States filed in this court a petition to enforce the summons.

4. The bank's objection to the summons was that the privacy of all its customers would be breached were the IRS to be allowed to go through all of the bank's records for five years in the search for any transaction by the parties being investigated. The bank said that it was willing to conduct the search itself, thereby protecting the customers' privacy, but that it would want to be reimbursed for the costs of such a search. It made no contention that the summons was not pursuant to a legitimate investigation, or that it was overbroad or ambiguous.

5. On July 10, 1974, this court ordered the bank to comply immediately with the summons. Jurisdiction was explicitly retained for the purpose of entertaining a motion by respondents for the costs incurred, should respondents wish to file such a motion after compliance was completed.

6. On May 1, 1975, respondents filed a motion for reimbursement, asserting that they had expended $2,545.28 in complying with the summons.

7. At oral argument the government made clear that it does not dispute the accuracy of the amount claimed by respondents—only their legal entitlement to it.

The government contends that the bank is not entitled to reimbursement because the costs incurred are of the kind that any bank should contemplate as part of the reasonable costs of doing business, and because the cases have held that only unreasonable financial burdens should be passed on to the government. The bank responds that $2500 is far from being a routine and reasonable disbursement, and that the cases would support reimbursement.

We therefore have implicit agreement between the parties that the question to be settled centers around the issue of reasonableness: what financial burden is it reasonable to require a third party to bear in producing its records for the purpose of aiding the government in investigating someone else? Unfortunately, the cases cited by the parties don't resolve the problem. There are very few of them, and none from this circuit. Most use the reasonableness approach, but there's an absence of discussion as to the monetary level at which a burden becomes unreasonable. See *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129 (3d Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L. Ed.2d 981 (1968); *United States v. Pittsburgh Nat'l Bank*, 388 F.Supp. 963 (W.D.Pa.1975); *United States v. Northwest Pa. Bank & Trust Co.*, 355 F.Supp. 607 (W.D.Pa.1973); *United States v. First National Bank of Fort Smith, Ark.*, 173 F.Supp. 716 (W.D.Ark.1959). A few of the cases hold explicitly that expenses such as those incurred by respondent here should be considered part of the normal expense of doing business as a bank, and should therefore not be reimbursable. *United States v. Bremicker*, 365 F.Supp. 701 (D.Minn.1973); *United States v. Jones*, 351 F.Supp. 132 (M.D.Ala.1972). Others don't even discuss this "cost of doing business" rationale, and order reimbursement of actual costs, no matter how small. See *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970).

The paucity and disarray of authority leaves this court in the position of having to analyze the interests at stake in order to come up with guide-

lines which balance the needs of the government against the rights of the third party source of information. When the government investigation is legitimate, as it was here and in all of the cases cited, there is no doubt but that the United States is entitled to have access to information relevant to the subject of investigation. See, e. g., *United States v. Dauphin Deposit Trust Co., supra,* at 130; *United States v. Jones, supra,* at 133. In such circumstances, a party's refusal to comply usually stems from either or both of two reasons: it feels that the summons asks for too much material, or it feels that it should be reimbursed. Although both are legitimate concerns, and they often arise in the same case, they should not be confused. Unfortunately, there may be a tendency to do so.

Most of the cases cited arose before the summons was complied with. The government was denied the material it sought, and went to court to enforce the summons. At that point the respondent would raise its objections as to scope or cost. Since overbreadth of scope leads to unreasonable costs, some courts sidestepped the reimbursement issue by dismissing the enforcement petition on the grounds of ambiguity or overbreadth, or by modifying its terms. *United States v. Northwest Pa. Bank & Trust Co., supra; United States v. First National Bank of Fort Smith, Ark., supra.* But when the summons was properly narrow in scope, courts seem implicitly to have assumed that the financial burden imposed was therefore reasonable. See *United States v. Bremicker, supra; United States v. Jones, supra.* This is not necessarily so, since a proper summons could in some cases involve tens of thousands of dollars, a burden which anyone would find unreasonable.

The court is here involved in a very delicate balancing act. There is no doubt but that citizens—both individuals and corporations—owe to their government certain duties, many of which cost time and money. For example, a bank incurs costs of time and money in complying with governmental regulations, but receives no compensation from the government. When, however, the government takes land from a private party for public use, it reimburses that party. That reimbursement is required by the Due Process Clause of the Fifth Amendment. Because these cases are so familiar to us, it seems relatively easy to see why one activity is reimbursed and the other isn't. Yet it's not easy to come up with a rationale which fairly divides all the costs of complying with various government mandates into two groups: those to be reimbursed, and those not.

■ There are, however, some principles on which we can seize. The regulation of banks is an exercise of fundamental governmental powers by a legislature which has presumably considered an issue of public concern and has determined that banks, in order to operate within the pale of government protection and approval, must do certain things. Banks are aware of this kind of regulation when they first open their doors, and are entitled to rally their legitimate political resources against them, or any other such measures, if they feel that the laws ought to be changed. But they are always bound to the current law because the legislature has determined that the public interest requires certain costs to be borne by banks in doing business. In addition, these regulations fall equally on all of the regulated class—all banks must comply, and bear the related costs. It is, for all, a cost of doing business.

■ That situation is quite different from our case, even though the government would label the costs of complying with a summons as a "cost of doing business." This "cost" is not predictably part of the banking business, does not fall upon all equally, and was not specifically evaluated by the legislature and imposed by it upon all those who do a banking business. Although the statute demands compliance with legitimate summonses, it is silent on the issue of

reimbursement. Given that silence, and the dictates of the Due Process Clause, this court feels that it would be unreasonable to expect a party such as respondent to bear anything other than nominal costs in complying with a government summons. The duties of a citizen to his government, see *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), do not run so far as absorbing a $2500 expense in aid of a government investigation of a third party.

 As firmly as the court believes that respondent is entitled to reimbursement, it also believes that the government is entitled to a prompt and complete response to a properly drawn summons, thus eliminating the long delays in compliance which have troubled the courts. See, e. g., *United States v. Davey, supra*, at 845. The summons at issue here was therefore handled in a manner which avoided most of the strains caused by governmental investigations. If this approach could be adopted generally, then parties could proceed with expediency and certainty.

 The procedure is quite simple: matters concerning the breadth and clarity of a summons are heard pre-compliance via a petition to enforce, with jurisdiction retained even after the terms of the summons are set; matters concerning reimbursement are then heard *after* compliance is complete. If reimbursement is the only issue, then the suit can be filed before compliance, with all proceedings continued until afterwards. Once parties in these situations know that reasonable expenses will be paid for by the government, the need for most reimbursement suits will be eliminated, leaving only those in which the amount itself is contested.

This procedure allows the proper exercise of governmental power without the trampling of individual rights. The government gets what it needs quite promptly, and pays for it—a fair bargain. A substantial side benefit is that the courts would soon be out of the business of having to hear lawsuits involving properly drawn summonses, because the right to reimbursement would no longer be in doubt. The only negative feature for the general public is that the government—i. e., the taxpayers—will have to bear the cost, but this is certainly more equitable than imposing that burden on an innocent third party.

 It will therefore be ordered that the United States reimburse respondent for the $2545.28 which it expended in complying with the summons in this case.