**UNITED STATES of America and Joseph A. Hopper, Special Agent, Internal Revenue Service, Petitioners,**

v.

**MELLON BANK, N. A. and James C. Karras, Vice President, Respondents (two cases).**

Civ. A. Nos. 75–1112, 75–1113.

United States District Court, W. D. Pennsylvania.

March 11, 1976.

John R. Tjaden, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., for petitioners.

Kenneth P. Simon, Pittsburgh, Pa., for respondents.

## OPINION

ROSENBERG, District Judge.

This matter is before me on two petitions presented by the United States and Joseph A. Hopper, Special Agent for the Internal Revenue Service, to enforce compliance with two summonses directing the respondents, Mellon Bank, N. A. and James C. Karras, Vice President, to appear and produce desired financial information in its possession of two taxpayers, Gurrentz International Corporation and Illinois Beef L. & W. S., Inc. At the hearing for the enforcement of the summonses, the two petitions were consolidated. Both summonses, Treasury Forms 2039, dated August 21, 1975, are identical except for the names of the taxpayers, and they request the following:

"1. All financial statements filed by or on behalf of (the taxpayer) and/or

its related trade names and/or affiliated corporations, listed on attachment from May 1, 1970 through April 30, 1973.

2. All files relating to financial transactions between you and (taxpayer) and/or its related trade names and/or affiliated corporations, listed on Attachment A, from May 1, 1970 through April 30, 1973, including correspondence, intra and inter office memorandums, and memorandums to file, and workpapers.

3. A list by names, account number or other descriptive identification or savings accounts, checking accounts, loan accounts, lines of credit, certificates of deposit, and safe deposit boxes in the name of (taxpayer) and/or its related trade names and/or affiliated corporations, listed on Attachment A, from May 1, 1970 through April 30 1970.

4. All financial statements filed during the period May 1, 1970 through April 31, 1973 by shareholders and/or officers of (taxpayer) in connection with loan or credit activity of (taxpayer) and/or its related trade names and/or affiliated corporations, listed on Attachment A, from May 1, 1970 through April 30, 1973. This includes financial statements filed by Henry Gurrentz, Joel Berg, Glenn Olbum, Morton Gurrentz, and Harry Gurrentz and N. J. Weisman."

The respondents assert that the petitioners are not entitled to the records in their possession and allege that the petitioners: (1) have not sustained their burden of proof under 26 U.S.C. § 7602; (2) have not established the relevance to a determination of tax liability of an examination of entries by the taxpayers into safety deposit boxes located at their banks; and (3) have not agreed to compensate them for the service of locating, assimilating and producing the required records.

In *United States v. McCarthy,* 514 F.2d 368, C.A.3, 1975, it was held that in order for the government to establish a prima facie case for the enforceability of a summons a three prong test must be met. The petitioners must plead: (1) that the investigation is legitimate and that the records demanded are relevant to it; (2) that the information they do seek is not within their possession; and (3) that the petitioners have followed the requisite steps of the Internal Revenue Service. *United States v. McCarthy, supra,* at page 373; *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■■ The petitioners have shown by way of affidavit and at the hearing for enforcement that their investigation does have a legitimate purpose and that the records sought are relevant to that investigation. It is quite clear that an investigation may lead to both civil or criminal penalties and that a summons is enforceable if issued in good faith and prior to a recommendation for criminal prosecution. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970). The petitioner, Agent Hopper, testified at the enforcement hearing that no such recommendation was made and the respondents who have the burden to prove an abuse of process did not bring forward any evidence to the contrary. *United States v. Powell, supra.*

Of more importance is that the Supreme Court on several occasions has held that an Internal Revenue summons directed to a third party was not a violation of the Fourth Amendment rights of the bank or the taxpayer. *California Bankers Association v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974; *Donaldson v. United States, supra; First National Bank v. United States,* 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925). Also, the Supreme Court has held that a bank being a corporation cannot invoke the constitutional privilege against compulsory self-incrimination by virtue of the Fifth Amendment. *California Bankers Association v. Shultz, supra; Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

■ The petitioners have also stated clearly that the records they seek are not already in their possession and the respondents have not rebutted this. The petitioners have established a prima facie case for enforcement of the two summonses sustaining their burden of proof.

■ The respondents claim that the records of entry in safe deposit boxes are not relevant to the petitioners' investigation. Records sought by the IRS to determine correct tax liability are relevant if shown that their production "might throw some light upon the correctness of the taxpayer's return." *United States v. Egenberg,* 443 F.2d 512, C.A.3, 1971; *United States v. Shlom,* 420 F.2d 263, C.A.2, 1969; *United States v. Harrington,* 388 F.2d 520, C.A.2, 1969.

Indeed, the testimony of Agent Hopper shows that production of the list of entries into safe deposit boxes might shed light on the correctness of the taxpayers' liability. (Tr. pg. 24, lines 9–18, direct examination of Agent Hopper by Attorney Tjaden, for petitioners.)

"Q. Have you determined that the books, or the documents and information that you are seeking in the summonses are relevant to your investigation into the tax liabilities of Gurrentz International and Illinois Beef L. & W. S., Incorporated?

A. Yes, I have made that determination.

Q. And they are relevant and essential?

A. Yes, they are relevant.

Q. Do you have in your possession any of those documents that are being sought by the two summonses?

A. No, I do not."

And in cross-examination (Tr. pg. 29, lines 8–18, examination of Agent Hopper by Attorney Simon for respondents):

"Q. Now, would you kindly explain to the court how a list of safe deposit boxes would have a bearing on the income tax liability of any person, please?

A. It could very easily. The list would, first of all, lead you to the entry card. If you had in your bank analysis—which I would hope to get into—found that there are substantial cash deposits going in and you cannot identify the source of their coming from, and there happen to be similar days, or, entries from the safe deposit box history, then there is a probability that they have come from there and you can start isolating your investigation."

And further in cross-examination (Tr. pgs. 30—lines 7–25 through 31—lines 1–16):

"Q. Now, we are, at this point, determining a person's tax liability. Now, for example, take the hypothetical case of a safe deposit box. Assuming, for example, that I have a safe deposit box and entered the same once a day during the entire year. Does that have any bearing on my personal income tax liability.

Mr. Tjaden: Objection.

THE COURT: Overruled.

A. It may well have because if you cannot identify the source of the income or the deposits going in—if you are working a bank deposits method, then that would indicate a potential source, and that could be civil, it could be criminal, in nature as to the reason.

BY MR. SIMON:

Q. But, Mr. Hopper, we are trying to determine a tax liability in this case—

A. That is correct.

Q. (continuing)—which is a dollar amount of a person's liability for taxes, and the fact that I enter a safe deposit box, I am trying to extract from you how that would have a bearing on a person's tax liability?

A. As I stated earlier, the history record leaves room for inferences. If the history record ties in with the unreported—or cash deposits which cannot be explained, it gives a potential source. When one conducts a tax investigation—when one wants to deter-

mine tax liability—he cannot determine a proper tax liability without first ascertaining what the facts are, and that is the purpose of determining the history.

Q. In this connection, though, you have stated that the safe deposit box is only relevant where there is an undisclosed, or, unsubstantiated disbursement or receipt of income, is that correct?

A. I didn't say that is the only time. I said that is the purpose of getting the information. I don't know the relevancy in a sense—what value that information is going to have until I put the whole picture together. I do know that it does carry some weight. It does bear on the issue. There may not be unexplained deposits. When I am in there, I don't know. I don't have the records yet.

Q. Well, you do not deem that this is necessary at the present, the searching of the safe deposit boxes?

A. I only asked at the present time for a list, and from that list I will try to develop—and this was done for the convenience of the bank—I will try to develop what information I absolutely need. I will not be going to the bank for information if I can get it from other sources.

Q. Well, you are doing that in this particular case, you are subpoenaing bank records and you are subpoenaing Gurrentz' records directly from the corporation which correspond—the same identical data is required in both of these cases, Mr. Hopper? You are asking in one case for a list of bank statements, the other cases the bank statements themselves. So that in that instance you are asking for the same thing, aren't you?

A. No, I am not, because in the first place what Mellon Bank keeps is not necessarily what Gurrentz International keeps. The documents, the correspondence, the background information gathered in Mellon Bank won't necessarily be the same with what is in the Gurrentz International—I did not ask for the ledger sheets at this time; I do intend to ask for them at a later date if I am unsuccessful or, have some missing when I get the records from the Gurrentz International."

■■ While I do respect the decision of Judge Teitelbaum in *United States v. Friedman,* 388 F.Supp. 963 (D.C.Pa.1975), I do not agree with his conclusion that a list of safety deposit boxes along with records of their entry necessarily reflect an investigation solely into criminal liability and should therefore not be required to be produced. Agent Hopper testified that no exact result may be garnered by the production of such records or, if in fact they will lead to any relevant information. However, production of such might and this proves critical to the petitioners' request. As I have stated above, the probability of a criminal liability resulting from an investigation into civil liability will not be a basis for quashing a summons.

■ While the respondent bank argues that a search of all 94 branch offices will tend to be unduly burdensome, the petitioners have made it clear, as stated in both summonses, that, "The Internal Revenue Service will provide necessary personnel and equipment to perform the search for the summonsed (sic) books, records, papers and information."

■ Finally, the respondents claim that they should receive compensation for the work they do in producing the required records. Taking into account that the IRS will provide such services as necessary to relieve any burden placed upon the respondents, I hold that the respondents are not to be compensated for their services which are to be performed as a duty owed by any other citizen as well as a bank. The records summoned are not so broad as to make the task an unreasonable search under the Fourth Amendment or an impossible performance because of the number of banking offices. The petitioners desire records of only two taxpayers for a four

year period. *United States v. Continental Bank & Trust Co.,* 503 F.2d 45, C.A.10, 1974; *United States v. Dauphin Deposit Trust Co.,* 385 F.2d 129, C.A.3, 1967; *United States v. Jones,* 351 F.Supp. 132 (D.C.Ala.1972).

"It has been pointed out that the banks in these cases stand no better or no worse than any other witness who may be called to court to produce records of someone else in his possession. These records are not privileged in the possession of the bank, the taxpayer has no proprietary interest in them and this is one of the burdens of citizenship in this country that one must produce records and testify in response to a subpoena. The banks should remember that the Federal Government renders many services to banks, including the service of protection. Any expense to which the bank may be put under the circumstances, we regard as de minimus." *United States v. The Savings & Trust Company, Indiana, Pennsylvania* and *United States v. Pittsburgh National Bank,* C.A. Nos. 74–999 and 74–1000 filed December 2, 1974.

Accordingly, the respondents, Mellon Bank and James C. Karras, its Vice President, will be ordered to produce all records summoned concerning the two taxpayers, Gurrentz International Corporation and Illinois Beef, L. & W. S., Inc.