**UNITED STATES of America and Joseph R. Sandefur, Special Agent Internal Revenue Service, Petitioners,**

v.

**COVINGTON TRUST & BANKING CO., and Ronald W. Guttridge, Vice-President, Respondents.**

Civ. A. No. 76–45.

United States District Court, E. D. Kentucky.

May 6, 1977.

Eldon L. Webb, U. S. Atty., James F. Cook, Asst. U. S. Atty., Lexington, Ky., for petitioners; F. Gerald Burnett, Tax Div., U. S. Dept. of Justice, Washington, D.C., of counsel.

Gerald F. Dusing, Adams, Brooking & Stepner, Covington, Ky., for respondents.

## MEMORANDUM OPINION

SILER, District Judge.

This case is before the Court to determine whether the respondents, Covington Trust and Banking Company (hereinafter "Bank") and its vice-president, Ronald W. Guttridge, have shown cause, in response to the Court's order of June 15, 1976, why they should not be required to comply with an Internal Revenue Service summons (hereinafter IRS) for the production of certain records in their possession.

On June 14, 1976, the United States of America and IRS Special Agent Joseph R. Sandefur, (hereinafter "petitioners"), filed a petition for judicial enforcement of an IRS summons, 26 U.S.C. §§ 7402(b), 7604(a). The petition alleges that petitioner Sandefur, in conducting an investigation of the federal income tax liabilities of a certain taxpayer, requested certain business records and information in respondents' possession. Respondents failed to comply with a summons issued by petitioner Sandefur pursuant to his statutory authority. 26 U.S.C. § 7602; 26 C.F.R. § 301.7602–1. The petition further alleges that the testimony and records covered by the summons are not in the IRS's possession; that no recommendation for prosecution of the taxpayer under investigation has been made; and that the information sought is necessary to determine the tax liabilities of the taxpayer for a four-year period.

Respondents contend that: (1) they are entitled to guaranteed reimbursement of the actual costs of compliance with the summons as a condition precedent to their compliance; and (2) that to compel them to bear the expenses of compliance would deprive them of property without compensation in violation of the due process clause of the Fifth Amendment to the United States Constitution.

Evidence was taken at a hearing held at Covington, Kentucky, on July 28–29, 1976. In addition, in ruling on this question, the Court has considered the memoranda filed by, and the oral arguments of, counsel for the parties.

Approximately twenty to thirty thousand documents come into the Bank each day. (The Bank has five branch offices but records are centralized.) Documents are microfilmed in "batch loads" in chronological order. In order to retrieve a needed document (here mostly checks), the ledgers in the Bank's permanent storage area would be consulted to determine the appropriate date (e. g., the day a check was paid). The microfilm is stored in cartons containing fifty to sixty rolls per carton. Each roll of film contains approximately 35,000 items. The Bank estimates that between 960 and 970 rolls of microfilm are involved here. The appropriate rolls of film would be handpulled, placed on a microfilm reader, the first item for the day in question located, and the "batch" containing the item sought located. Once the item sought was located, a button would be pushed to make a copy of it. The copy would include several checks copied on front and back. The check needed would be cut out and the front and backs stapled together to make a complete copy.

The Bank estimates that 2150 checks are covered by the summons. Based on previous experience in complying with IRS summonses, the Bank estimates that 688 man hours will be required to comply with the instant summons. Figured on the Bank's overtime rate of $5.87 per hour (the Bank states it cannot spare the personnel to work

on the requested information during normal working hours), and including an estimated $700.00 for paper and chemicals used in the reproducing process, the Bank estimates the expenses of compliance with the summons would be about $4,739.00. (The Bank charges its regular customers one dollar to copy a single check. More than one check is copied on a "time and materials" basis.)

The IRS offered to provide its "employees, equipment and supplies to aid or conduct the necessary actions to obtain the requested documents. Or . . . to provide the equipment, paper, and necessary supplies for use by . . . (bank) employees." Petitioners' exhibit 2. The Bank rejected this offer contending it would breach the confidentiality of bank records.

█ Although respondents make no issue on the point, the Court finds that, based on the evidence introduced at the hearing and the affidavit of petitioner Sandefur, complaint, Exhibit "B," that a *prima facie* case has been made for the enforcement of the summons. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. McCarthy*, 514 F.2d 368, 373 (3d Cir. 1975).

## FIFTH AMENDMENT

█ Respondents contend that requiring the Bank to expend the funds required to comply with the summons would amount to a taking of property without just compensation and deprive it of property without due process of law.

Respondents' contention finds little support in the decisions of the United States Circuit Courts of Appeals which have decided this issue.

In *United States v. Friedman*, 532 F.2d 928, 935 (3d Cir. 1976), the Court observed:

Any fifth amendment due process or taking contention would seem to be foreclosed by the Supreme Court's decision in *Hurtado v. United States*, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973), which held that 28 U.S.C. § 1821, providing for the reimbursement of incarcerat-

ed material witnesses at only one dollar a day did not violate the fifth amendment because the giving of evidence was a public duty owed to the government by everyone. Any doubt on this score is resolved by the holding in *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 50, 94 S.Ct. 1494, 1512, 39 L.Ed.2d 812, 834 (1974), that the record keeping and microfilming requirements in the Bank Secrecy Act of 1970, are constitutional. If the banks are entitled to reimbursement for the cost of complying with the summonses, it must be on the basis of some authority less than constitutional. (Citations to footnotes omitted.)

[An earlier Third Circuit case, *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129, 130–31 (3d Cir. 1967), *cert. denied*, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968), (hereinafter *Dauphin*) had held only that, under the facts of that case, compliance with the summons did not violate the Fifth Amendment.]

The Court in *United States v. Continental Bank & Trust Co.*, 503 F.2d 45, 48 (10th Cir. 1974), relying in part on the *Dauphin* case, held that, under the facts before it, enforcement of the summons would not constitute a "taking" under the Fifth Amendment. [The facts of that case were very similar to those in the case *sub judice*. There the bank's estimated compliance costs totalled about $1500.00.]

The Second Circuit in an analogous situation allowed compensation for the "fair value" of costs of compliance with an IRS summons but no basis for that holding is given in the opinion. *United States v. Davey*, 426 F.2d 842 (2d Cir. 1970). Of course, there the IRS conceded that it should pay some amount. *Id.* at 844.

The District Courts which have specifically considered a Bank's entitlement to reimbursement for the expenses of compliance with an IRS summons have reached varying conclusions on the issue. Compare *United States v. Farmers & Merchants Bank*, 397 F.Supp. 418 (C.D.Cal.1975); *United States v. Friedman*, 388 F.Supp. 963 (W.D.Pa. 1975), *modified*, 532 F.2d 928 (3d Cir. 1976);

*United States v. Northwest Pennsylvania Bank & Trust Co.*, 355 F.Supp. 607 (W.D.Pa. 1973); *United States v. First National Bank*, 173 F.Supp. 716 (W.D.Ark.1959), (granting some type of relief to the banks); with *United States v. Mellon Bank*, 410 F.Supp. 1065 (W.D.Pa.1976); *United States v. Bremicker*, 365 F.Supp. 701 (D.Minn. 1973), and *United States v. Jones*, 351 F.Supp. 132 (M.D.Ala.1972), (denying relief to the banks).

However, of the district court cases granting relief to banks, not all granted the relief of reimbursement for compliance expenditures. For example, in *United States v. First National Bank, supra*, the problem was an "unreasonable and void" summons, *id.* at 721, and the remedy granted was dismissal of the IRS's complaint without prejudice. So, too, in *United States v. Northwest Pennsylvania Bank & Trust Co., supra*, the Court found the summons unnecessarily broad so that its enforcement would unduly burden the bank. *Id.* at 614. The Court, however, partially enforced the summons and specifically found that requiring the bank to "look through the microfilms of transactions for a particular day" was not "unduly burdensome." *Id.* Compare *United States v. Mellon, Bank, supra,* a later case from the same District denying relief. The District Courts in *United States v. Friedman, supra,* and *United States v. Farmers & Merchants Bank, supra,* both appear to rely on the due process clause as a basis for requiring reimbursement. Of course, the United States Third Circuit Court of Appeals made it clear that the Fifth Amendment cannot be used to require reimbursement. *United States v. Friedman, supra,* 532 F.2d at 938. This holding undercuts the rationale of many of the cases cited, which relied on language in the earlier case of *United States v. Dauphin, supra* at 130, that implied the Fourth or Fifth Amendments might protect banks from an "unreasonable and excessive financial burden" incurred in compliance with a summons.

This issue appears to be a matter of first impression in the Sixth Circuit. However,

our Court of Appeals has observed that the statutory power of the IRS "to examine records and witnesses to ascertain tax liability . . . is in the nature of the inquisitorial power of a grand jury and should be liberally construed." *United States v. Widelski*, 452 F.2d 1, 4 (6th Cir. 1971). The United States Supreme Court said long ago that:

> [T]he giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned, and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public.

*Blair v. United States*, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). See also *Hurtado v. United States, supra.* [Of course, the normal statutory witness fees may be available to respondents in this case. *Roberts v. United States*, 397 F.2d 968 (5th Cir. 1968).]

The Court holds, therefore, that respondents have no right to reimbursement under the Fifth Amendment. *United States v. Friedman, supra.* Alternatively, the Court finds that, in view of the facts of this case, particularly the offer of the IRS to provide personnel and supplies for procuring the needed records, that the summons imposes no unreasonable financial burden on the Bank. *United States v. Continental Bank & Trust Co., supra.* The Court agrees with *United States v. Friedman, supra* at 934, that the Bank is "free to decline this offer of IRS assistance." However, under the facts of this case, the case of *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), nullifies many of the arguments which the bank could have made on this point.

### STATUTES AND RULES

Respondents also contend that they are entitled to reimbursement under the au-

thority of Fed.R.Civ.P. 45(b), (d). Of course, the Court in *United States v. Friedman, supra,* 532 F.2d at 936, rejected the contention that Rule 45 applies to summons enforcement proceedings by virtue of Fed. R.Civ.P. 81(a)(3). That Court did find power in the District Court "to fashion appropriate rules as to the fairness of the enforcement order," and to require reimbursement as a condition to enforcement of the summons. *Id.* at 937. However, in remanding for an "individualized determination that the cost involved in complying with the summons . . . exceeds that which the respondent may reasonably be expected to bear as a cost of doing business," *id.* at 938, the Court also observed:

> [N]ot all recipients of a § 7602 summons are similarly situated. A manufacturer, who may only have dealt with a taxpayer quite casually and occasionally, for example, might not be required, as a part of the cost of doing business, to make an unreimbursed record search. A bank, however, whose business is the facilitation of financial transactions, and which keeps records of all customer dealings as a matter of course, if not law, may be required to do so. (Citations to footnotes omitted.)

*Id.* at 937.

 Assuming, *arguendo,* that the Court has the power to order the IRS to reimburse the Bank for those expenses of compliance which are unreasonable costs of doing business, but see *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 20–21, 47 S.Ct. 1, 71 L.Ed. 131 (1926); *Walling v. Norfolk Southern Ry.,* 162 F.2d 95, 96 (4th Cir. 1947), the Court cannot grant the Bank the relief it seeks. First, the Bank has not demonstrated that an expenditure of approximately $4,739.00 (if the Bank accepts no assistance from the IRS) would be unreasonable as a "cost of doing business." (Respondents' brief does indicate that the Bank has deposits of $65 million.)

Second, the Court is in agreement with the cases which hold that the bank has a duty to comply with an IRS summons and the costs attendant to compliance, absent a

vague or overbroad subpoena, should be borne by it as a cost of doing business. See *United States v. Continental Bank & Trust Co., supra* at 48; *United States v. Mellon Bank, supra* at 1069–70; *United States v. Bremicker, supra,* at 703; *United States v. Jones, supra,* at 134; *cf. California Bankers Ass'n v. Shultz, supra,* 416 U.S. at 50, 94 S.Ct. at 1512; *contra, United States v. Farmers & Merchants Bank, supra.*

Therefore, the Court finds that respondents have not shown cause why the summons should not be enforced. Accordingly, by separate order entered this even date, the Court will direct that respondents comply with the summons.