**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**WINTERS NATIONAL BANK AND TRUST COMPANY, Defendant.**

No. C–3–78–54.

United States District Court,
S. D. Ohio, W. D.

March 23, 1981.

See also, 601 F.2d 395.

Denis E. Hynes, Federal Trade Commission, Washington, D. C., for plaintiff.

Roger J. Makley, Coolidge, Wall, Matusoff, Womsley & Lombard Co., L.P.A., Dayton, Ohio, for defendant.

DECISION AND ENTRY ON PLAINTIFF'S MOTION TO MODIFY JUDGMENT OF APRIL 16, 1980, REQUIRING FEDERAL TRADE COMMISSION TO PAY ALL COSTS INCIDENT TO WINTERS' COMPLIANCE WITH FEDERAL TRADE COMMISSION SUBPOENA

RICE, District Judge.

The case is before the Court on the Federal Trade Commission's (Commission) Motion to Modify Judgment. Specifically, the Commission seeks modification of the Court's Order of April 16, 1980, as modified by Order of May 6, 1980, in which the Commission was ordered to pay all costs incident to compliance with the Commission's subpoena undertaken by Defendant-Winters National Bank & Trust Company (Winters).

The Motion to Modify was filed on May 13, 1980; Winters' Memorandum Contra was filed on June 2, 1980. It should also be noted that on June 16, 1980, the Commission filed a Notice of Appeal from the Judgment of April 16, 1980.

## BACKGROUND

On November 18, 1977, the Commission issued a Subpoena Duces Tecum to Winters to testify and produce documents in accordance with the subpoena. The subpoena was issued in connection with a Commission investigation to determine whether sellers and lessors were in compliance with 16 C.F.R. § 433, the Commission's Holder-In-Due-Course Rule (HIDC).

Winters opposed enforcement on the ground that, as a bank, it was not subject to the investigatory powers of the FTC. An enforcement action was filed in the U. S. District Court, in Denver, Colorado. That court dismissed the action upon the stipulation of the parties that it would be refiled in this court.

On April 26, 1978, this Court held that the subpoena was issued in connection with a lawful investigation by the Commission, and therefore, directed Winters to comply therewith. On September 11, 1979, the Sixth Circuit Court of Appeals affirmed this Court's decision and ordered compliance.

Thereafter, Winters applied to this Court for relief from Specifications 4–6 of the subpoena; for an order that the call for production of documents be made in Dayton rather than Denver; and an order requiring compliance with the notification provision

of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401, *et seq.*

On April 16, 1980, this Court concluded that the information sought by the Commission was reasonably relevant to its investigation and, therefore, ordered Winters to comply with the subpoena. However, because it determined that Winters is a third party to the investigation, the Court ordered that the costs incident to the undertaking be paid by the Commission. The Court further ordered that the information sought be made available at Winters' Montgomery County, Ohio offices. In an Order, dated May 6, 1980, the Court modified its April 16, 1980 Order to the extent that the parties be required to comply with the Right to Financial Privacy Act, in responding to Specification # 4 of the subpoena.

## I. MOTION TO MODIFY: COSTS OF COMPLIANCE—FILE SEARCH

*Commission's Position* :

The Commission seeks modification of that portion of the April 16, 1980, Order directing it to pay all costs incident to Winters' compliance with the subpoena, particularly the document search costs as distinct from reproduction costs. The affidavit of Eugene Schumaker, Winters' Audit Manager, estimates that two man-years of effort is involved in compilation of the information sought by the Commission (Application for Relief From Subpoena Specifications, Entry # 15, Exhibit A). In support of its position, the Commission relies on several cases wherein the courts have declined to shift the entire cost of compliance to the government. *E. g., United States v. Tivian Sales, Inc.,* 589 F.2d 49 (1st Cir. 1978), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2884, 61 L.Ed.2d 312 (1979); *FTC v. Rockefeller,* 591 F.2d 182 (2d Cir. 1979); *United States v. Friedman,* 532 F.2d 928 (3d Cir. 1976).

The Commission asserts that the subpoena calls for information related to the conduct of Winters' business; therefore, the costs of file searches are an unreimburseable cost of doing business. In the alternative, the Commission asserts that if Winters is entitled to some reimbursement, it is impossible to assess Winters' fair share at the present time. Consequently, the Commission seeks modification of the Order to grant Winters the right to petition for reimbursement of costs after compliance has been achieved.

*Winters' Position* :

Winters opposes modification for the reason that this Court has determined that Winters is a third party to the investigation and not a target thereof. It asserts that it is a mere repository of certain information sought by the Commission in its investigation of retailer compliance with the HIDC Rule which is inapplicable to banks. Because the investigation is not directly related to the conduct of Winters' business, Winters maintains that the Court's Order assessing the costs of compliance to the Commission was an appropriate exercise of the Court's discretion.

## DISCUSSION

The case law on the subject of costs and subpoena enforcement actions is sparse. Consistent in the cases, however, is the principle that the award of costs is determined on a case by case basis subject to the discretion of the court. There is no authority directly on point with the captioned cause. For reasons discussed below, each is distinguishable.

The Commission contends that this Court should not have imposed document search costs on the Commission because those costs are incident to the conduct of Winters' business even if it is a third party to the Commission's investigation. The three major cases relied on by the Commission seem to lend some support to this position but, on close examination, can be distinguished from the case at bar. *United States v. Tivian Laboratories, Inc., supra; FTC v. Rockefeller, supra; United States v. Friedman, supra.*

In the first case, *United States v. Tivian, supra,* the EPA had requested detailed information from Tivian concerning the company's acquisition, use and disposal of polychlorinated biphenyls (PBC's) and comparable chemical substances. The EPA stated that it was investigating the nature and extent of possible adverse effects of those substances on the environment. *Id.* at 51. Tivian refused to comply and an enforcement action was brought. The government moved for summary judgment which the court granted after ruling against Tivian on its constitutional challenges. It did not, however, rule on Tivian's claim that it should be reimbursed for the costs of retrieving and collating the information sought.

On appeal, the court affirmed the district court except for remanding to determine Tivian's claim that it was entitled to reimbursement. The court acknowledged the power of the district court to "impose reasonable restrictions and conditions upon its enforcement of the subpoena." *Id.* at 55. The court then noted:

> It is only, however, in very extreme circumstances that it is appropriate for a court to impose conditions of this nature and we do not mean to suggest that such circumstances necessarily or indeed are likely to exist here (citations omitted). "Some burden on subpoenaed parties is to be expected, . . . is necessary in furtherance of the agency's legitimate inquiry and the public interest. . . ."

*Id.*

This language indicates that imposing costs on the government is not a common practice. However, it is important to recall that Tivian was one of the targets of the EPA investigation and that the EPA is authorized by statute to request an owner or operator of a company using chemicals, which may be hazardous, to supply the agency with information. 33 U.S.C. § 1318(a)(1)(A)(v), 42 U.S.C. § 1857 c–9(a)(i)(1)(E). Because of the statutory grant under which the request was issued and because the respondent was regulated by the agency issuing the request, the cost of compliance can easily be seen as one incident to the conduct of Tivian's business.

This is not necessarily as clear in the case at bar. Winters is not and cannot be a target of the Commission's investigation into retailer compliance with the HIDC Rule, nor does the FTC have regulatory authority over Winters. Unlike Tivian, Winters is not a target of the agency's investigation; Winters is, as this court has previously determined, a third party to the investigation. Further, it is significant that the court in *Tivian* did not preclude the possibility of reimbursement; it remanded the case back to the district court for determination of this issue, although it indicated that a favorable result for Tivian was not likely. *Tivian* does not lead to the inevitable conclusion that Winters should bear the costs of compliance, although such a result is possible. If viewed as an extreme case, the captioned cause awarding costs to Winters is appropriate under *Tivian.*

Similarly, *FTC v. Rockefeller, supra,* is distinguishable. In *Rockefeller,* seven bank holding companies and officers of each appealed from an order enforcing subpoenas of the Commission. The Commission sought, *inter alia,* information on the relationship between domestic petroleum companies and financial institutions, specifically, the extent and effect of interlocking directorates, personnel and business relationships. *Id.* at 184–85. The court of appeals affirmed the district court's order of enforcement and its order refusing reimbursement of the appellant's costs of compliance.

The appellants resisted enforcement on the ground that the Commission had no authority to investigate banks. The court held that the Commission had the authority to issue the subpoenas, *id.* at 190, and referred to the appellants as "ancillary targets" of the investigation since the Commission was interested in the relationship between the petroleum companies and financial institutions. *Id.* at 187.

On the issue of reimbursement, the court noted that it is within the court's discretion to require the government to bear the costs.

*Id.* at 191. The court found no abuse of discretion in refusing to do so because "the subpoenas are directly related to the conduct of appellants' business. They are not mere repositories of information performing a service for the government in complying with the subpoenas." *Id.*

The case at bar differs from *Rockefeller* in that the appellants therein were ancillary targets of the investigation by virtue of the Commission's purpose to study the relationship between the petroleum companies and financial institutions. Because the study focused on that interrelationship, the subpoenas were viewed as being directly related to the conduct of appellants' businesses, thereby, justifying the court's refusal to order reimbursement. In the present case, however, there is no claim that the Bank is an ancillary target of the Commission's investigation. The investigation focuses on retailers' compliance with the HIDC Rule which is inapplicable to banks. Winters' role in facilitating compliance with the Rule is not an avowed purpose. Although the Commission points out that the Commission is investigating sellers who use forms provided by Winters and who may have a portion of their inventory financed by Winters, the subpoena here is not directly related to the conduct of Winters' business as were the subpoenas in *Rockefeller*. At most, the subject of the subpoena is only indirectly related to the conduct of Winters' business. Viewed as a mere repository of the information sought by the Commission, Winters' services in retrieving and collating the material sought by the Commission should probably be reimbursed.

The third case, *United States v. Friedman, supra,* cited by the Commission as the lead case on cost allocation, does not necessitate modification of the judgment with respect to cost allocation. In *Friedman,* the government brought actions against several banks and an accountant to enforce summonses issued in connection with an examination into the tax liabilities of certain taxpayers. *Id.* at 929–930. The district court laid down a general rule that reimbursement would be required in all 26 U.S.C. § 7604(b) enforcement proceedings. *Id.* at

937. The court of appeals reversed on this point, holding that:

(b)efore such a condition [reimbursement] is imposed the district court must make an individualized determination that the cost involved in complying with the summons in question exceeds that which the respondent may reasonably be expected to bear as a cost of doing business. *Id.* at 938.

The Commission relies on *Friedman* primarily because the court makes specific reference to the court's power to require financial institutions to make unreimbursed record searches when served with 26 U.S.C. § 7602 summons. "A bank ... whose business is the facilitation of financial transactions, and which keeps records of all customer dealings as a matter of course, if not law, may be required to do so." *Id.* at 937 (footnote omitted). But the court's holding, quoted above, with respect to reimbursement, required a case by case approach. It leaves the door open to an order of reimbursement where the court determines that those costs exceed those reasonably expected as a cost of doing business.

The cost of doing business test may, but need not be applied here. If applied, it can be concluded that any but nominal costs exceed those reasonably expected as a cost of Winters' doing business since Winters is not a target, direct or ancillary, and since the information sought is not directly related to the conduct of Winters' business.

Of course, the court could apply the standard and allocate some portion of the cost to Winters. A difficulty arises in attempting to affix the amount which is unreimburseable. The fact that the information sought is only indirectly related to the conduct of Winters' business makes the justification for affixing one amount or percentage over another highly elusive. Under a mere repository or indirect relation approach, it would seem proper to reach the conclusion that the costs of complying with the Commission's subpoena are not reasonably expected as a cost of doing business; therefore, under the circumstances of this case, reimbursement is appropriate.

This is not unlike the approach by the court in another IRS summons case, *United States v. Farmers & Merchants Bank*, 397 F.Supp. 418 (C.D.Cal.1975), cited by Winters in its Memorandum Contra Motion to Modify. The Bank brought an action seeking an order requiring the government to reimburse it for costs incurred in complying with an IRS summons. The summons required production of bank records of transactions of several customers for a five year period for which the bank expended approximately $2500. *Id.* at 418–19. The issue considered by the court was "what financial burden is it reasonable to require a third party to bear in producing its records for the purpose of aiding the government in investigating someone else?" *Id.* at 419. In resolving the issue, the court noted, "There is no doubt but that citizens—both individuals and corporations—owe their government certain duties, many of which cost time and money. For example, a bank incurs costs of time and money in complying with governmental regulations, but receives no compensation from the government." *Id.* at 420. The court also recognizes the difficulty of coming up with a rationale which divides costs of complying with governmental mandates into those which are reimburseable and those which are not. *Id.* It points out that costs incurred by virtue of government regulations of banks is justified as an unreimburseable cost of doing business because such regulation is an exercise of fundamental legislative power; because of public interest; and because such regulation falls equally on all of the regulated class. *Id.* However, the court found this rationale absent in connection with the bank's compliance with an IRS summons. The court states:

> This "cost" is not predictably part of the banking business, does not fall upon all equally, and was not specifically evaluated by the legislature and imposed by it upon all those who do a banking business. Although the statute demands compliance with legitimate summonses, it is silent on the issue of reimbursement. Given that silence, and the dictates of the Due Process Clause, this court feels that

it would be unreasonable to expect a party such as respondent to bear anything other than nominal costs in complying with a government summons.

*Id.* at 420–21. Addressing the negative aspect of its decision, i. e., that the taxpayer ultimately bears the cost, the court concludes that "this is certainly more equitable than imposing that burden on an innocent third party." *Id.* at 421.

Applied to the case at bar, *Merchants Bank, supra,* supports the Court's original order requiring the Commission to reimburse Winters for its costs of compliance. As a third party, non-target of the investigation, Winters' costs do not squarely fall within a cost of doing business test unless that test is broadly construed to include all facets of Winters' business-direct and indirect.

The Court does not, however, wish to go as far as to justify its order on the basis of the Due Process Clause of the Fifth Amendment, which the Court, at least in part, did in *Merchants Bank.* The district court, in a subsequent case, attacked *Merchants Bank's* reliance on the Fifth Amendment and cited *United States v. Friedman, supra,* as authority for its conclusion that the Fifth Amendment does not require reimbursement. *United States v. Covington Trust & Banking Co.,* 431 F.Supp. 352, 354 (E.D.Kentucky, 1977). The Court can reach a result similar to *Merchants Bank* on grounds that do not reach constitutional proportions. Those grounds include: that the cost of compliance is not predictably part of Winters' business; the costs do not fall on all banks equally; and that it was not evaluated by the legislature and imposed by it upon all those who do a banking business. Thus, the costs of compliance are not incurred by virtue of government regulations of banks. This result can be further supported by the weight of authority which recognizes the Court's exercise of discretion in determining what, if any, cost of compliance is reimburseable to the subpoenaed party.

The remaining authorities relied upon by the Commission with respect to the issue of

reimbursement serve a largely supplementary function. The Commission's authorities recognize the Court's decision but rule against reimbursement. *E. g., SEC v. Arthur Young & Co.,* 584 F.2d 1018 (D.C.1978); *SEC v. OKC Corp.,* 474 F.Supp. 1031 (N.D. Tex.1979); *In re Grand Jury Subpoena Duces Tecum,* 436 F.Supp. 46 (D.Md.1977). Discussion of these cases at this point adds very little to this Court's opinion. Winters distinguishes the Commission's cited authorities and reiterates that the matter is within the sound discretion of the Court.

Overruling the Commission's Motion to Modify Judgment is justified under the aforementioned authorities. To reiterate: 1. allocation of cost of compliance is within the discretion of the Court; 2. the information sought by the Commission is not directly related to the conduct of Winters' business; 3. Winters is a third party that is neither the direct nor ancillary target of the Commission's investigation, primarily because Winters, as a bank, is not subject to the HIDC Rule; 4. Winters is a repository of the information sought by the Commission; thus, its compliance is in the nature of a service to the Commission. These factors taken together would seem to justify requiring the Commission to reimburse Winters for compliance.

There is an argument, not specifically raised, that might warrant a contrary conclusion. Operating on the presumption that this Court's decision may have a wide impact on the Commission, and given the fact that the matter is currently on appeal, it is worth mentioning, briefly.

One of the reasons that the Court in *United States v. Covington Trust & Banking Co., supra,* denied reimbursement for the cost of compliance with the IRS summons was that, disagreeing with *Merchants Bank, supra,* under the Fifth Amendment the respondent had no right to reimbursement. In reaching this conclusion, the court discussed the nature of the IRS's statutory power. The court quoted from the Sixth Circuit Court of Appeals decision in *United States v. Widelski,* 452 F.2d 1, 4 (6th Cir. 1971), "the statutory power of the IRS

'to examine records and witnesses to ascertain tax liability . . . is in the nature of the inquisitorial power of a grand jury and should be liberally construed.'" 431 F.Supp. at 355. The breadth of the power of the grand jury is then described in a quote from the United States Supreme Court in *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919):

> "[T]he giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned; and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public."

431 F.Supp. at 355.

The impression that can be derived from this pronouncement is that the cost of complying with a grand jury summons is unreimburseable in the absence of statutory authority therefor because compliance, and, by implication the costs incident thereto, is a public duty performed in the public interest. The potential applicability of this stance in the case at bar lies in the Supreme Court's characterization of the Commission's investigatory power as characterized in *United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 363, 94 L.Ed. 401 (1950), the leading case on the subject. The Court stated:

> It has the power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*Id.*

Presumably, if the Court chose to extend the analogy, then it could come to the conclusion that Winters' cost of compliance

with the Commission's subpoena is unreimburseable. Viewed as a public duty performed in the public interest, analogous to the duty to respond to grand jury summonses, Winters' compliance and its cost incident thereto could be assessed against it. This argument is of the same cloth as the one suggesting that the cost of compliance is incident to the cost of doing business. Doing business brings with it certain obligations, one of which is to perform certain tasks in the furtherance of the public interest, which clearly the Commission's investigation is; thus, no reimbursement.

There are several weaknesses in this argument. First, there is absolutely no case law support for extending the analogy to the point of concluding that no reimbursement is warranted; on the contrary, the courts have consistently upheld the exercise of discretion in such cases. Secondly, the public interest considerations in complying with a Commission subpoena, especially when a non-target third party is involved, would seem to militate against extension of the grand jury analogy to the matter of reimbursement of compliance costs. Furthermore, unless the Court were to assess all file search costs to Winters, it would still have to apply a reasonableness standard in the absence of a statutory ceiling on reimbursement. That would leave the Court in the same position that it is in under any position against complete reimbursement, i. e., what portion of Winters' compliance cost is reimburseable and what is not. No definite formula has been offered and none apparently exists.

The Commission has suggested that if the Court determines that Winters is entitled to some reimbursement, now is not the time to fix that amount. It has moved, alternatively, that Winters be permitted to petition the Court for reimbursement after compliance has been completed. Without a formula for measuring fair share or reasonableness when the information is sought from a mere third party to the Commission's investigation, it would seem that the questions currently before the Court would still exist when compliance is complete.

It seems that an all or nothing approach to the allocation of file search costs is warranted in the present case. Anything less is not only unwieldy but it also leaves the Court open to reconsideration of its decision at a later time. A wait and see approach in the present case is defective for the reasons noted above.

The Court is relatively free in this case to fashion whatever allocation of cost order it chooses. The case law is sufficiently ambiguous to permit a decision either way. The overruling consideration operative in this case is: to what extent should the Commission be permitted, without cost, to delve into and extract information from the files and records of Winters, a third party, non-target of the Commission's lawful investigation. The equities seem slightly in Winters' favor. This Court, will, therefore, pursuant to the above discussion, affirm Judge Rubin's earlier decision granting reimbursement to Winters for its costs in complying with the subpoena in question.

## II. MOTION TO MODIFY: PLACE OF PRODUCTION AND COST OF RE-PRODUCTION AND MAILING:

In its Judgment of April 16, 1980, the Court ordered that the information sought by the Commission be made available at Winters' Montgomery County, Ohio offices. The reasons stated by the Court to support this portion of the Order are sound and neither party challenges them. The Commission, however, states that the subpoena "can be responded to, by mail, with copies and, in some cases [sic], with a verified statement." Motion to Modify Judgment at 5. It then suggests that the cost of reproduction should be assessed by the Court after compliance. *Id.*

Winters, in its Motion Contra, does express a willingness to comply by mail but this willingness is specifically conditioned on the Court's Judgment of April 16, 1980, ordering the Commission to pay all costs of compliance. Presumably, a modification of that Judgment, assessing any reproduction and/or mailing costs to Winters, would dissipate its willingness to comply by mail.

If the Court follows an all or nothing approach to costs, the question of who bears the cost of reproduction as distinct from cost of the file search will be settled. If the cost of reproduction is maintained as a separate consideration, then the Court's reasoning in the original order adequately supports assessing the cost of reproduction against the Commission. This is especially true in light of the Commission's reluctance to send one of its employees from Denver, Colorado to Montgomery County, Ohio. There seems to be no compelling reason for Winters to assume the financial burden of transmitting the information to a place outside of Montgomery County, Ohio, simply because of the Commission's unwillingness to travel to the place where the information is stored. Therefore, based on the foregoing discussion and for the reasons given in the Order of April 16, 1980, the Commission is ordered to pay the reproduction and mailing costs incident to Winters' compliance with the Commission's subpoena.

### III. MOTION TO MODIFY JUDGMENT: LIST OF NAMES AND ADDRESSES OF CUSTOMERS COVERED BY THE RIGHT TO FINANCIAL PRIVACY ACT.

In footnote 4 of the Commission's Motion to Modify Judgment, the Commission urges the Court to order Winters to provide the Commission with the names and addresses of customers covered by the Right to Financial Privacy Act, 12 U.S.C. § 3401(4). Motion to Modify Judgment at 2. Winters, in its Motion Contra at 5, has expressed no objection to doing this. Based on this agreement between the parties, production of the names and addresses of those customers covered by the Act is so ordered.

### IV. CONCLUSION

To summarize, it is the Order of this Court:

1) That Judge Rubin's Order of April 16, 1980, directing that the Commission pay all costs incident to compliance with its subpoena undertaken by Winters (ordering reimbursement of costs) be affirmed;

2) That the Commission is ordered to pay (reimburse) Winters for its reproduction and mailing costs incident to its compliance with the subpoena in question; and

3) That Winters provide the Commission, within 30 days from date of receipt of notice of this decision, with the names and addresses of customers covered by the Right of Privacy Act, 12 U.S.C. § 3401(4).