AMERICAN STANDARD, INC., Plaintiff,

v.

The BENDIX CORPORATION,
Defendant.

Civ. A. No. 73CV670–W–3.

United States District Court,
W. D. Missouri, W. D.

June 2, 1976.

**444**

Dick H. Woods, John C. Noonan, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., Henry M. Moore, John B. Tieder, Jr., Bruce H. Gerhard, Lewis, Mitchell & Moore, Washington, D. C., for plaintiff.

Jerome T. Wolf, Spencer, Fane, Britt & Browne, Kansas City, Mo., Eldon H. Crowell, W. Stanfield Johnson, Reavis, Poque, Neal & Rose, Washington, D. C., for defendant.

ORDER DIRECTING DEFENDANT TO PAY PLAINTIFF ONE–HALF OF THE REASONABLE EXPENSES IN- CURRED BY PLAINTIFF IN PREP- ARATION FOR, AND CONDUCT OF, INTERVIEWS WITH HERSCHEL WOLFE, JACK McINTEER, RICH- ARD CONWAY, AND EARL LONG, AND IN OBTAINING TRANSCRIPTS THEREOF, AND ORDER DIRECT- ING DEFENDANT TO PAY PLAIN- TIFF ITS EXPENSES IN SEEKING THIS PROTECTIVE ORDER

WILLIAM H. BECKER, Chief Judge.

Plaintiff has moved for a protective order against defendant's continued possession and use of transcripts of four interviews conducted by plaintiff's counsel with non- party witnesses. Plaintiff claims that the transcripts are part of its work product and that defendant wrongfully obtained them without notice and hearing under the dis- covery process.

#### I

The following material facts are substan- tially uncontroverted.[1]

This treble damage antitrust action arises out of the efforts of plaintiff and its prede- cessor in interest to produce the APX–72 Transponder under a government contract which obligated defendant to provide de- sign and production assistance. On June 22, 1973, in connection with plaintiff's in- vestigation of its claim, one of plaintiff's attorneys, Paul Walstad and a consultant, Richard Borden, entered the Wilcox Elec- tric, Inc. (hereinafter "Wilcox") plant in

---

1. These facts were summarized at a pretrial conference on April 21, 1976, and the parties were given an opportunity to controvert or supplement any of the facts stated.

Kansas City, Missouri, without permission, to conduct *ex parte* interviews with four Wilcox employees. These employees had knowledge pertaining to plaintiff's claim because Wilcox was formerly a division of plaintiff, though it had been independent of plaintiff since 1971.

After being informed of their presence, Wilcox Vice-President Donald R. Egloff reprimanded Walstad and Borden for entering the plant without permission. However, he indicated that the interviews would be permitted upon several conditions, one of which was that the employees be provided with transcripts of the interviews so that they could verify the accuracy of the transcripts of their statements.

By telegram dated July 26, 1976, plaintiff's counsel confirmed their agreement to the condition, but stated:

"We do not make copies of interviews available to opposing council (sic) or to representatives of the government and consider these interviews as part of our work product." (Plaintiff's Deposition of Donald R. Egloff, Exhibit No. 3)

On August 1 and 2, 1973, plaintiff's counsel interviewed three of the four Wilcox employees, Jack McInteer, Herschel Wolfe, and Richard Conway.

By telegram dated August 29, 1973, plaintiff's counsel requested an interview with the fourth employee, Earl Long, and reconfirmed its agreement to provide Long and other employees with a transcript of the interview, and again stated:

"Neither the tapes nor the transcription will be made available to opposing counsel or to the government and the interviews will be considered as part of our attorney's work product." (Plaintiff's Deposition of Donald R. Egloff, Exhibit No. 4)

The interview with Long took place on September 18, 1973. The interviews and transcripts were in the form of questions and answers.

Following the interviews, in accordance with the agreement, plaintiff's counsel delivered copies of the transcripts to Egloff for delivery to the employees whose statements had been taken. Before distributing the transcripts to the interviewees, without express permission Egloff made copies of each and placed them in his official files. Sometime prior to March 31, 1975, Egloff removed the Long and Wolfe transcripts and placed them in his individual files at his home.

On March 31, 1975, Egloff was relieved of his duties as Vice-President of Wilcox, although he remained on the payroll until August 1975 because of accrued sick leave and earned vacation. On April 7, 1975, Egloff communicated with defendant's general counsel and advised him that he, Egloff, was going into the consulting business and that he had background information which might be helpful in the defense of this action. Defendant's general counsel stated that the Washington law firm representing defendant in this action would communicate with Egloff. Later on April 7, 1975, defendant's Washington counsel communicated with Egloff to verify Egloff's identity and then orally agreed to pay Egloff compensation for Egloff's time and expenses as a consultant. No mention of the transcripts was made at that time.

On April 9, 1975, defendant's counsel met with Egloff. During this meeting Egloff stated that he had in his possession transcripts of four interviews of Wilcox employees conducted by plaintiff's counsel. Defendant's counsel briefly examined one of the transcripts to determine its authenticity, but the transcripts then remained in Egloff's possession. Egloff informed defendant's counsel of the manner in which he obtained the transcripts, but did not inform them of the work-product assertions made in the July 26, 1973, and August 29, 1973, telegrams.

Defendant's counsel apparently had some doubts about the propriety of securing the transcripts from Egloff. On April 17 and 23, 1975, one of them communicated with the general counsel for Wilcox and the general counsel for the Northrop Corporation,

Wilcox's dominant owner, to determine whether either Wilcox or Northrop had any objection to Egloff's provision of copies of the transcripts to defendant's counsel. Neither expressed any objection. On April 25, 1975, Egloff delivered the first transcript to defendant's counsel.

Two of the transcripts, those of McInteer and Conway, were in the official files in the Wilcox plant. Egloff had retained a key by which he could gain access to these files; and, on the evening of May 2, 1975, he proceeded, without any further express or implied authority from Wilcox, to enter the plant and to obtain copies of the two transcripts. These transcripts, with a third which he had at his home, were provided to defendant's counsel on May 9, 1975.

Egloff submitted to defendant a statement for his time and expenses in securing the two transcripts from the Wilcox plant on May 2, 1975. Defendant's counsel were concerned about the propriety of the entry to the Wilcox premises, and therefore refused to pay Egloff for his time and expenses in entering the locked building without permission to secure the transcripts. His expenses included a concealed payment to the watchman of Wilcox to permit the unauthorized entry. Defendant's counsel also informed Wilcox of the entry, and requested Wilcox to reconfirm their prior authorization for defendant to secure copies of the transcripts. On June 24, 1975, Wilcox reconfirmed the prior authorization by letter.

## II

■ The four transcripts which are the subject of this motion contain much information which is material to this action. They also include information concerning the thought processes of plaintiff's counsel disclosed by the nature and previously prepared formulation of the questions asked,[2] and therefore are within the classic definition of work product. *Hickman v. Taylor,*

329 U.S. 495, 510–511, 67 S.Ct. 385, 91 L.Ed. 451, 462 (1947); 8 Wright & Miller, *Federal Practice and Procedure,* Section 2021 *et seq.* (1970 ed.). See also: *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). However, the immunity of the work product to discovery is not an absolute immunity but is a qualified immunity. *Hickman v. Taylor, supra; United States v. Nobles, supra.* The issues presented are (1) whether plaintiff waived the conditional immunity of its work product, the transcripts, from disclosure by Egloff; and (2) if the conditional immunity was not waived, whether the transcripts would be discoverable under the Federal Rules of Civil Procedure, upon appropriate conditions.

### A. *Waiver.*

Defendant has taken the position that plaintiff waived any work product protection of the transcripts from discovery, by providing copies to Egloff and Wilcox who are not parties to this action. The immunity was not waived, because the transcripts were not provided to Egloff or Wilcox but were provided to the employees who were interviewed, and were provided on the express condition that they not be disclosed to opposing counsel. Therefore there was no waiver.

■ It is true that the immunity of the work product doctrine can be waived. *United States v. Nobles, supra.* If documents are disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim the protection of the work product doctrine. However, ". . . disclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." 8 Wright & Miller, *Federal Practice and Procedure,* Section 2024 (1970 ed.). See also: *Stix Products, Inc. v. Unit-*

---

**2.** Copies of the transcripts were filed in connection with "Defendant's Suggestions In Opposition To Plaintiff's Motion For A Protective Order."

ed *Merchants & Manufacturers, Inc.*, 47 F.R.D. 334 (S.D.N.Y.1969); "Developments in the Law—Discovery," 74 Harv.L.Rev. 940, 1044–1045 (1961). An illustration of this rule is that disclosure to parties with a common interest in the litigation does not waive work product immunity because it can be assumed that parties with a common interest will not disclose to opposing parties. *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 45 (D.Md.1974); *Stanley Works v. Haeger*, 35 F.R.D. 551, 555 (D.Ill.1964).

 In this case, the transcripts were disclosed to third persons with a special interest as sources of the information therein, but on the express condition that they not be disclosed to the government or other parties to the litigation. The copies were intended to be the confidential property of the persons interviewed. Plaintiff did not intend that either Egloff or Wilcox retain copies. Rather, plaintiff reasonably anticipated that Egloff and Wilcox would respect plaintiff's reservation against disclosure to others. Under these circumstances, by providing those giving the statements with copies, plaintiff neither intended that the transcripts be disclosed to defendants, nor that there be substantially increased opportunities for defendant to obtain the copies.[3] *Cf. International Business Machines Corp. v. United States*, 471 F.2d 507 (2nd Cir. 1972) *reh. en banc*, 480 F.2d 293 (2nd Cir. 1973).

 Because plaintiff did not waive the work product conditional immunity attaching to the transcripts, and because the transcripts were intended to be the confidential property of the persons interviewed, defendant's action in obtaining Wilcox's consent before accepting the transcripts did not authorize the surreptitious disclosure

thereof to the defendants without plaintiff's permission. Wilcox, by virtue of its agreement not to disclose the transcripts, was precluded from authorizing disclosure.

**B. *Necessity.***

 Because the transcripts were protected by the immunity work product doctrine, the manner in which defendant obtained the transcripts cannot be condoned, and should not be repeated. Nevertheless, had defendant candidly requested discovery of the transcripts through orderly procedures by motion, and a showing of necessity pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, the transcripts would have been discoverable under the circumstances. In *Hickman v. Taylor*, *supra*, the Supreme Court noted that ". . . [w]here relevant non-privileged facts remain hidden in an attorney's file and where production of these facts is essential to the preparation of one's case, discovery may properly be had." *Id.*, 329 U.S. at 511, 67 S.Ct. at 304, 91 L.Ed. at 462. That ruling has been included in Rule 26(b)(3), F.R.Civ.P., *supra*, which states in pertinent part that materials protected by the work product doctrine are discoverable ". . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." 8 Wright & Miller, *Federal Practice and Procedure*, Section 2025 (1970 ed.); 4 Moore's *Federal Practice*, ¶ 26.64[3] (1975 ed.).

The transcripts contain detailed information concerning plaintiff's claim which could not be fully secured by defendant at this stage because of the passage of time,

**3.** Defendant has cited *Goldberg v. United States*, —— U.S. ——, 96 S.Ct. 1338, 47 L.Ed.2d 603, 44 U.S.L.W. 4424 (1976), in support of its contention that the transcripts were not protected by the work-product doctrine. In *Goldberg*, the Supreme Court ruled that witness statements prepared by a government attorney and approved by the witness are producible

under the Jencks Act, Section 3500, Title 18, United States Code. That case is clearly distinguishable because the Jencks Act authorized disclosure in the criminal prosecution. No similar congressional act mandates disclosure of the transcripts without regard to the work product doctrine in this action.

and other changed circumstances. It is therefore concluded that defendant would have been able to make a showing sufficient for discovery, upon appropriate conditions, of the transcripts under Rule 26(b)(3), F.R.Civ.P., *supra*, if a motion for discovery had been filed.

Because the transcripts would have been discoverable under Rule 26(b)(3), F.R.Civ.P., *supra*, the relief which plaintiff requests, namely, a protective order against continuing possession of, and use of evidence obtained from, the transcripts, is not now appropriate. Furthermore, any effort to preclude defendant from using knowledge obtained from the transcripts would be complex, time consuming, and probably impractical without elaborate orders disqualifying defendant's counsel and employees and consultants from participating in this action.

### C. *Expenses.*

Although the transcripts were discoverable, upon appropriate conditions, plaintiff is entitled to an award of a portion of the expenses it incurred in procuring the transcripts and to an award of the expenses it incurred in seeking this protective order.

■ Plaintiff was required to expend a substantial amount of time and incur substantial expenses in its preparation for and conduct of the interviews, and in securing the transcripts. Under Rule 26(c)(2), F.R. Civ.P., *supra*, the Court may order "that the discovery may be had only on specified terms and conditions . . . ." Pursuant to this provision, the Court may order that a party seeking discovery pay a portion of the expenses incurred in obtaining discoverable materials. 8 Wright & Miller, *Federal Practice and Procedure*, Section 2038 (1970 ed.). Because access to the transcripts enabled defendant to avoid incurring expenses in connection with the preparation for and

the interviewing of the four Wilcox employees, defendant will be directed to pay to plaintiff one-half of the reasonable costs of preparation for the interviews, the interviews and the obtaining of the transcripts, including but not limited to legal and technical research and planning for the interviews. Plaintiff is also entitled to its expenses in seeking this protective order and in the implementation thereof.

For the foregoing reasons, it is therefore

ORDERED that defendant be, and it is hereby, directed to pay to plaintiff one-half of the reasonable expenses, including but not limited to legal and technical research and planning incurred by plaintiff in preparation for, and conduct of, interviews with Herschel Wolfe, Jack McInteer, Richard Conway, and Earl Long, and in obtaining transcripts of those interviews. It is further

ORDERED that defendant be, and it is hereby, directed to pay to plaintiff its expenses in seeking this protective order. It is further

ORDERED that plaintiff submit to defendant an itemized statement for these expenses, and that counsel undertake to agree on the amount thereof. Any disagreement shall be submitted to the Court within 60 days with detailed statements in writing on the areas of agreement and disagreement.