### INDIAN LAW RESOURCE CENTER, Plaintiff,

v.

### DEPARTMENT OF The INTERIOR, Defendant,

### The Hopi Tribe, Intervening Defendant.

### Civ. A. No. 79–0540.

United States District Court,
District of Columbia.

Sept. 25, 1979.

John C. Fox, Robert T. Coulter, Steven M. Tullberg, Washington, D. C., for plaintiff.

Mary A. McReynolds, Atty., Dept. of Justice, Washington, D. C., for defendant Dept. of the Interior.

Wayne Owens, Salt Lake City, Utah, for intervening defendant The Hopi Tribe.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff ("Resource Center"), a nonprofit corporation providing legal assistance to Indian people and governments, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). It seeks disclosure of documentation concerning payments made since 1964, from funds under federal control, to attorneys acting on behalf of The Hopi Tribe. Plaintiff's initial request, directed to the Bureau of Indian Affairs ("BIA"), was denied by defendant Department of the Interior ("Interior") which controls BIA. The matter is before the Court on cross-motions for summary judgment. The Hopi Tribe as intervenor-defendant joins Interior's motion for summary judgment. The issues have been fully briefed, and all parties have participated in oral argument before the Court.

As part of its general trust responsibility to the Indians, Interior reviews and approves the choice of counsel and fixing of fees by Indian tribes. Federal authorization of Hopi fee arrangements is pursuant to two distinct statutory schemes. Under the Indian Reorganization Act of 1934, § 16, 25 U.S.C. § 476 (1976), legal services are paid for out of tribal funds. In addition, Pub.L. No. 93–531, § 8, 88 Stat. 1712, 1715 (1974), providing for the settlement of land claims between the Hopi and Navajo tribes, authorizes direct payment by the Federal Government for legal services rendered in connection with such disputed land claims. 25 U.S.C. § 640d–7(e) (1976).

Interior uses the same review and approval process for the two sources of funding. After the Hopi Tribe's contract with counsel has been approved by BIA, the Tribe's attorneys may submit periodic statements of services and expenses to the Tribal Council. Payment is authorized when these statements are approved successively by resolution of the Tribal Council, by the Superintendent of the Hopi Agency, by the

BIA Area Office Finance Officer, and by the BIA Area Director.

The documents in Interior's possession that are covered by Resource Center's request include (1) Tribal resolutions reflecting the names of the lawyers chosen and the fee amounts endorsed; (2) periodic law firm statements to the Tribal Council, with attached vouchers describing in detail legal services provided and travel expenses incurred. The face of each voucher reflects a disposition by both the Council and the Superintendent of the Hopi Agency; (3) one-page form memoranda from the Superintendent to the BIA Area Director transmitting the documents described in (2); and (4) one-page form memoranda from the BIA Area Office Finance Officer to the Area Director, recommending action to be taken, and reflecting action actually taken by the Area Director on the claims for payment.

Interior has 197 sets of the documents described in categories two through four. The Court conducted *de novo* review by personally examining *in camera* ten representative sets submitted by Interior, as well as a detailed *in camera* affidavit addressing each of the ten sets submitted by counsel for The Hopi Tribe. *See Ray v. Turner,* 190 U.S.App.D.C. 290, 298, 587 F.2d 1187, 1195 (D.C. Cir. 1978).

The issues before the Court have been narrowed since Resource Center commenced this action. Initially, Interior withheld all documents, invoking exemption four of FOIA, 5 U.S.C. § 552(b)(4).[1] However, the agency now proposes to release the form memoranda of categories three and four: all memoranda addressing fees paid directly from federal funds are to be released without excisions, while memoranda concerning tribal funds will be disclosed with the requested and approved payment figures deleted. In view of the agency's decision, The Hopi Tribe's continuing interest in nondisclosure of these documents can no longer be recognized under FOIA. *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). The documents are to be disclosed, notwithstanding claims for exemption by intervenor-defendant.

The Court must instead focus on the remaining areas of dispute between plaintiff and Interior. Interior continues to withhold the Tribal Council resolutions and the amounts requested and paid from tribal funds on grounds of confidentiality; and it withholds the law firm statements on grounds of both privilege and confidentiality, all pursuant to exemption four of FOIA.

In order to justify nondisclosure under exemption four, a defendant must show that the information sought (other than trade secrets) is (a) commercial or financial; (b) obtained from a person; and (c) privileged or confidential. *National Parks and Conservation Ass'n v. Morton,* 162 U.S.App. D.C. 223, 224, 498 F.2d 765, 766 (D.C. Cir. 1974); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 212, 450 F.2d 670, 673 (D.C. Cir. 1971). The Hopi Tribe, as a corporation that is not part of the Federal Government, is plainly a person within the meaning of the Act. 5 U.S.C. § 551(2) (1976). *See Stone v. Export-Import Bank of United States,* 552 F.2d 132, 136 (5th Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *Soucie v. David,* 145 U.S.App.D.C. 144, 156, 448 F.2d 1067, 1079 n. 47 (D.C. Cir. 1971). The documents at issue portray a financial relationship between The Hopi Tribe and its private counsel. They consist of approved fee schedules, precise fee amounts, invoices, and vouchers with ubiquitous and detailed monetary references. There are no segregable portions devoid of financial information; furthermore, most if not all vouchers contain discussions of present or prospective commercial transactions. Thus the only issue before the Court is whether or not the withheld information is either confidential or privileged.

■ Interior argues that documents otherwise encompassed by exemption four are confidential if received from The Hopi Tribe pursuant to the agency's fulfillment of its trust responsibilities. The conduct of

---

[1]. The exemption allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

the United States when acting in its capacity as trustee to an Indian tribe is "judged by the most exacting fiduciary standards." *Seminole Nation v. United States*, 316 U.S. 286, 296–97, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942). Interior operates as trustee in reviewing and approving mandated documentary submissions from The Hopi Tribe. It claims that it must comply strictly with fiduciary obligations, including the duty of loyalty prohibiting disclosure of information acquired as trustee, especially where, as here, disclosure is contrary to the express instructions of the beneficiary. *See Restatement (Second) of Trusts* § 170, Comment s, at 372 (1959); A. Scott, *The Law of Trusts*, § 170 (3d ed. 1967); G. Bogert, *The Law of Trusts and Trustees*, § 543 (revised 2d ed. 1978). *Cf.* Cal.Ann.Fin.Code § 1582 (West 1979) (prohibiting disclosure by trustee to third parties). Thus Interior's position, implemented in a somewhat inconsistent manner,[2] is that as trustee it should not be required to divulge whatever material The Hopi Tribe as beneficiary declares to be confidential, so long as the material otherwise qualifies under exemption four.

This argument, in relying on subjective tribal assertions as the sole touchstone of confidentiality, fails to conform to exemption four requirements. *Charles River Park "A", Inc. v. Department of Housing and Urban Development*, 171 U.S.App.D.C. 286, 519 F.2d 935 (D.C. Cir. 1975); *National Parks and Conservation Ass'n v. Morton, supra.* Under exemption four's objective test for confidentiality, neither the submitter's preference for secrecy nor the government's express or implied assurances to that effect can be dispositive. *National Parks, supra,* 162 U.S.App.D.C. at 224–225, 498 F.2d at 766–67. There must be independent evidence that disclosure will likely result in harm, to the submitter's competitive position or to the government's ability to collect necessary information. *Id.* 162 U.S.App.D.C. at 228, 498 F.2d at 770. The blanket allegation of harm to the trust relationship *per se* does not, standing alone, constitute such evidence.[3]

Without a showing that disclosure of the particular documents at issue will injure the individual or governmental interests identified in *National Parks*, no exemption for confidentiality can be applied. Defendants have failed to make such a showing either for the approved fee schedules requested under category one, above, or for the precise fee amounts to be paid from tribal funds, requested under category four. Because both the Indians and the BIA Regional Office must supply this fee information as a precondition to disbursement of funds,

**2.** Interior seriously erodes its own argument for a generic trust exemption by releasing some financial information over objections of The Hopi Tribe. Indeed since Interior's trust responsibilities are implicated regardless of the source of funding for legal services, defendant's inconsistent administrative stance toward disclosure of payment figures is inexplicable. *Compare* 78 Cong.Rec. 11726 (1934) (remarks of Rep. Howard) *with* 120 Cong.Rec. 37545, 37728–29 (1974) (remarks of Sen. Metcalf and Sen. Jackson).

**3.** Efforts have been made to secure a special *nondisclosure* statute for all Indian trust information, but without success. *See* S. 2773, 95th Cong., 2d Sess. (1978); Letter from Sen. James Abourezk, Chairman, to Members of Sen. Select Comm. on Indian Affairs (April 27, 1978) 2; Memorandum from Solicitor, Department of the Interior, to Legislative Counsel (June 9, 1978) 3–4. As defendant concedes, the precise nature and scope of the trust relationship is uncertain. *See generally* Chambers, *Judicial Enforcement of the Federal Trust Responsibility to Indians*, 27 Stan.L.Rev. 1213–34, 1246–48 (1975). The Court expresses no view on this issue; it simply observes that whatever the ultimate source of fiduciary obligation, FOIA requires a showing of particular interests adversely affected before confidentiality can be established.

The analogy drawn between Interior's obligation and a trustee's duty of loyalty to a private trust is not to the contrary. A fiduciary is disloyal when he injects into a trust transaction either his personal interest or that of a third party. Bogert, *supra* at § 543. At the same time, liability is predicated on some showing of consequent change in position: either loss to the beneficiary or gain by the trustee or third party. *See generally id.*; Scott, *supra* at §§ 170–170.25. Interior is faced here with the comparable burden of particularizing the harm, a task not made easier by FOIA's assertion of a significant public interest favoring disclosure; but in any event it cannot simply claim disloyalty in the air.

disclosure can hardly impair the government's ability to gather necessary information. Nor is there any indication as to how publication of attorney fee arrangements will result in competitive disadvantage to The Hopi Tribe.

There is, however, substantial evidence of future harm attending disclosure of the detailed law firm statements, described above in category two. Counsel for the Hopis, who also represent numerous other tribes, affirmed orally and in writing that following disclosure by Interior they would recommend reversion to prior retainer arrangements with no detailed explanation of services rendered. Although the earlier arrangement may technically satisfy the *National Parks* test by furnishing to the government all "necessary" data, the information would be less comprehensive and less useful for monitoring purposes than the current submissions. The government's interest in reaching decisions on an efficient and intelligent basis would likely be adversely affected. Moreover, the present law firm vouchers refer regularly and often in detail to Hopi planning and negotiation concerning property leases, mineral rights, disputed land claims, competition for certain federally funded projects, and legislative strategies. The Court concludes, following careful inspection of representative vouchers and Hopi counsel's supporting *in camera* affidavit, that disclosure of the statements would prejudice Hopi interests not only in the Tribe's negotiations with the private sector but also in its long and bitter struggle against its traditional opponent, the Navajo Tribe. This inter-tribal controversy, which centers on competing territorial claims and has persisted for decades in Congress and the federal courts,[4] is referred to extensively in the attorney vouchers.

At the same time, the law firm statements also qualify as privileged. Their detailed itemization of persons contacted and locations visited on particular days, research memoranda prepared on specific topics, and precise amounts of attorney time spent on identified issues, frequently relates to matters of past, present or potential future litigation. The vouchers reveal strategies developed by Hopi counsel in anticipation of preventing or preparing for legal action to safeguard tribal interests. Such communications are entitled to protection as attorney work product. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Jordan v. Department of Justice*, 192 U.S.App.D.C. 144, 591 F.2d 753 (D.C. Cir. 1978). *See also* 8 Wright & Miller, *Federal Practice and Procedure*, § 2024 (1970). They are privileged even if the anticipated litigation did not develop, *Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), and after it has terminated, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734–36 (4th Cir. 1974) (en banc), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975).

There is no evidence that the vouchers have been disclosed to any party other than Interior, which is acting as confidential agent of the Tribe. Such limited disclosure does not waive confidential status[5]; nor does it constitute a waiver of the work product privilege, as it will not substantially increase the opportunities for potential adversaries to obtain the information. *American Standard, Inc. v. Bendix Corp.*, 71 F.R.D. 443, 446 (W.D.Mo.1976); *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y.1969). Because the Hopi-Navajo rivalry over land and nat-

4. *See, e. g.*, Pub.L. No. 85–547, 72 Stat. 403 (1958); Pub.L. No. 93–531, 88 Stat. 1712 (1974); *Healing v. Jones*, 210 F.Supp. 125 (D.Ariz.1962), *aff'd*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963); *Sekaquaptewa v. MacDonald*, 544 F.2d 396 (9th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 (1977).

5. Plaintiff has secured certain documents from BIA containing information related to that re-

quested here. The disclosure, however, involved no law firm vouchers, and, in any event, was not authorized. *See* Affidavit of Jose A. Zuni, attached to Interior's reply memorandum, July 10, 1979. Unauthorized disclosure does not deprive documents of their exemption status. *Safeway Stores, Inc. v. FTC*, 428 F.Supp. 346 (D.D.C.1977).

ural resources is continuous and of long-standing duration, and certain leasing negotiations between the Hopis and the private sector are of a recurrent nature, the Court finds that no reasonably segregable portion of the vouchers remains after protected parts are identified. *See National Parks, supra,* 162 U.S.App.D.C. at 229, 498 F.2d at 771; *Kent Corp. v. NLRB, supra* at 624. The law firm statements are therefore entirely exempt from disclosure under exemption four, on grounds of both privilege and confidentiality.

One further matter remains. Although Interior claims only confidentiality for documents other than the law firm statements, a claim rejected by the Court, The Hopi Tribe bolsters Interior's exemption four claim by asserting privilege as well. The Tribe's contention that attorney identities or actual fee amounts are privileged matters must be rejected. Tribal Council resolutions and attorney fee schedules are not prepared in anticipation of litigation; the privilege afforded to attorney work product is clearly inapplicable here. *See generally Hickman v. Taylor, supra.* Furthermore, the attorney-client privilege, which extends to the substance of matters communicated to an attorney in professional confidence, as a rule does not cover the identity of a client or attorney or the payment of fees. *In re Wasserman,* 198 F.Supp. 564, 566–67 (D.D.C.1961); *Colton v. United States,* 306 F.2d 633, 638 (2d Cir. 1962); *United States v. Strahl,* 590 F.2d 10, 11 (1st Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977). The exceptional circumstances in which disclosing the fact of employment or the nature of a fee arrangement would inculpate the client or otherwise prejudice a confidential communication are not present here. *See In re Grand Jury Proceedings,* 517 F.2d 666, 671–72 (5th Cir. 1975); *Colton v. United States, supra,* at 637.

Plaintiff's motion for summary judgment is hereby granted with respect to all identified documents except for law firm state-ments, comprehended by category two; only in the instance of these statements is defendants' motion for summary judgment granted. Defendant Interior is directed to release the designated documents to the Resource Center in their entirety.

SO ORDERED.