**UNITED STATES of America, Plaintiff,**

v.

**CBS, INC., Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC.,**
**Defendant.**

**Nos. CV 74–3599–RJK, CV 74–3600–RJK.**

United States District Court,
C.D. California.

Sept. 21, 1984.

As Modified Nov. 8, 1984.

U.S. Dept. of Justice, Antitrust Div., Bernard M. Hollander, Bernard J. O'Reilly, Washington, D.C., U.S. Dept. of Justice, Antitrust Division, Barry J. Kaplan, Chicago, Ill., Leon W. Weidman, Los Angeles, Cal., for plaintiff.

Cravath, Swaine & Moore, Robert F. Rifkind, Stuart W. Gold, New York City, Bergson, Borkland, Margolis & Adler, Daniel H. Margolis, James R. Loftis, Washington, D.C., O'Melveny & Myers, John G. Niles, Wyman, Bautzer, Rothman, Kuchel & Silbert, James S. Schreier, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

### I. *The Litigation*

On December 10, 1974, the United States filed virtually identical antitrust complaints

against CBS, Inc. ("CBS"), American Broadcasting Companies, Inc. ("ABC"), and National Broadcasting Company ("NBC"), charging defendants with illegal practices in connection with their acquisition of prime-time programming from independent producers. The complaints charged, *inter alia,* that defendants had engaged in practices which eliminated buyers other than themselves from the prime-time programming market.

On November 28, 1977, this Court entered a Final Judgment based upon a proposed consent decree between NBC and the United States. On July 31, 1980, this Court entered a Final Judgment based upon a proposed consent decree between CBS and the United States. On November 14, 1980, this Court entered a Final Judgment based upon a proposed consent decree between ABC and the United States.

## II. *The Subpoenas and the Discovery Dispute*

In August and September, 1978, CBS and ABC (hereafter "defendants") served subpoenas duces tecum and ad testificandum on five motion picture studios: Columbia Pictures Industries, Inc., Gulf & Western Industries, Inc., MCA, Inc., Twentieth Century Fox Film Corporation and Warner Communications Inc. (hereafter "Nonparty Witnesses"), and on seventeen individual officers and employees of the Nonparty Witnesses.

The subpoenas sought production of documents in the Nonparty Witnesses' control relating to television production and the production of theatrical feature films since 1960 and, in some cases, earlier. On September 29, 1978, the United States filed a motion to quash defendants' subpoenas. On October 31, 1978, the Nonparty Witnesses filed a motion to quash the defendants' subpoenas.

This Court ruled on the motions on March 5, 1978, ordering that the subpoenas be quashed insofar as they sought "information dated prior to May 4, 1970" and "information dealing with theatrical feature film production, distribution, and exhi-

bition in theatres." The subpoenas were then enforced and the document production began.

After a series of discovery disputes between defendants and the Nonparty Witnesses, production was completed. The Nonparty Witnesses produced approximately 6,000,000 documents pursuant to the subpoena duces tecum. The defendants conducted over 80 days of depositions of the Nonparty Witnesses and their employees pursuant to the subpoenas ad testificandum. The total cost to the Nonparty Witnesses of complying with defendants' discovery requests exceeded $2 million.

## III. *Procedural History of This Motion*

On March 14, 1980, the Nonparty Witnesses filed a Motion for Costs seeking to recover $2,250,548 in costs which had been incurred in connection with defendants' subpoenas. This Court denied the motion, finding that the Nonparty Witnesses were not necessarily entitled to reimbursement of costs incurred as a result of discovery and that such costs should be absorbed in this case by the Nonparty Witnesses as a cost of doing business. *See United States v. Friedman,* 532 F.2d 928, 937 (3d Cir. 1976); *United States v. Farmers and Merchants Bank,* 397 F.Supp. 418, 420 (C.D. Cal.1975); *Blank v. Talley,* 54 F.R.D. 627, 628 (S.D.N.Y.1972). The Nonparty Witnesses appealed.

The Ninth Circuit reversed and remanded this matter for entry of findings of fact and conclusions of law. *United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 372 (9th Cir.1982), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982). The Court indicated that certain factors were important in determining issues of reimbursement. These factors are: (1) the scope of discovery; (2) the invasiveness of the request; (3) the extent to which the party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production. *Id.* at 372–73 n. 9. In addition, the Court noted that this Court should consider the relative recalci-

trance of the defendants and Nonparty Witnesses and whether the network defendants can be considered to have prevailed under the consent decrees. *Id.* at 372 n. 10. Finally, the Court also stated that the Nonparty Witnesses' interest in the outcome of this litigation had "some bearing" on reimbursement. *Id.* at 372.

The Ninth Circuit by its remand required entry of Findings of Fact and Conclusions of Law, but left unanswered the question of precisely what findings and conclusions should be entered in this regard. Consequently, this Court is faced with the task of seeking out authority in support of what the Ninth Circuit declared generally to be the non-party witnesses' entitlement to recover. This Court has looked elsewhere for judicial guidance as to what costs are and are not proper items for recompense. What follows is this Court's consideration and application of such specific rules of law that exist either as binding precedents or helpful guidance.

IV. *The Nonparty Witnesses' Entitlement to Reimbursement of Some of the Costs Incurred*

■ On remand, the defendants and Nonparty Witnesses argued the question whether the Court of Appeals actually mandated that reimbursement be given or whether this Court can now consider the matter *de novo.* Although the Ninth Circuit refrained from deciding explicitly that the defendants are liable for the costs incurred by the Nonparty Witnesses, the Ninth Circuit opinion strongly implies that the Nonparty Witnesses are entitled to recover such costs. This implication is buttressed by the fact that the Order of the Ninth Circuit "reversed" the prior Order of this Court denying recovery to the Nonparty Witnesses. The Court need not decide whether the Ninth Circuit mandated that reimbursement be given, however, for upon consideration of the factors outlined by the Ninth Circuit and other relevant case law, the Court concludes that the Nonparty Witnesses are entitled to reimbursement for a portion of the costs incurred in complying with defendants' discovery demands.

a. *Scope of Discovery*

There is no question that the scope of discovery in this action was broad. The defendants requested every document in the Nonparty Witnesses' possession relating to television and theatrical production. The Nonparty Witnesses eventually produced over 6,000,000 documents. As a result, the costs incurred by the Nonparty Witnesses in responding to the subpoenas were substantial. The defendants argue that the scope of discovery was not *overly* broad since the Court determined that the defendants needed all of the documents produced. The fact that the material sought was relevant to the defendants' defense, however, does not make the scope any less broad or mandate that the producing Nonparty Witnesses bear the costs of production. *See United States v. Farmers and Merchants Bank,* 397 F.Supp. at 420 ("a proper summons could involve tens of thousands of dollars, a burden which anyone would find unreasonable").

b. *Invasiveness of the Requests*

There can also be no question but that the subpoenas were invasive. A substantial amount of the information sought was confidential or privileged. The need to protect the Nonparty Witnesses from disclosure of this information was particularly acute in this case because the defendants and the Nonparty Witnesses are direct competitors and customers. *See Collins and Aikman Corporation v. J.P. Stevens & Co.,* 51 F.R.D. 219, 220 (D.S.C.1971) (need to withhold information greater when party seeking discovery is a competitor). *See also Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980). Again, the fact that defendants were entitled to obtain some or all of the information sought does not make it reasonable to require the Nonparty Witnesses to absorb the costs of production. *See United States v. Farmers and Merchants Bank,* 397 F.Supp. at 420.

#### c. *Need to Separate Responsive From Privileged or Irrelevant Material*

To respond to defendants' subpoenas, the Nonparty Witnesses argue that they had to separate responsive information from privileged or irrelevant information because responsive information was commingled with privileged or confidential information in the Nonparty Witnesses' files. The defendants argue, however, that since they sought virtually every document in the Nonparty Witnesses' possession, the Nonparty Witnesses cannot argue that they needed to separate information. In any event, the Nonparty Witnesses did incur substantial costs sorting through documents before production and in seeking protective orders to protect privileged or irrelevant material. The fact that some of this separation was done post-production rather than preproduction is irrelevant. As Professor Moore suggests, the reasonable and fair solution was to have the Nonparty Witnesses sort through the material first. *See* 5A *Moore's Federal Practice* Paragraph 45.05(1) (2d ed. 1984).

#### d. *Reasonableness of the Costs of Production*

The costs incurred by the Nonparty Witnesses in this case were extraordinarily high. They seek more than $2 million in reimbursement. These high costs, however, were the direct result of the defendants' broad subpoenas. Each of the Nonparty Witnesses was required to hire personnel and use current personnel to comply with the subpoenas. Moreover, some of the production had to be coordinated between the east and west coasts. Considering the scope of the defendants' subpoenas and the number of documents that were eventually produced, this Court concludes that the costs of complying with the requests are reasonable. As noted, however, the fact that the costs incurred were reasonable does not mean that it is reasonable for the Nonparty Witnesses to pay them. *See United States v. Farmers and Merchants Bank,* 397 F.Supp. at 420.

#### e. *Relative Recalcitrance of the Defendants and the Nonparty Witnesses in Relation to Discovery*

At oral argument, the defendants and Nonparty Witnesses disputed whether the relative recalcitrance of the defendants and Nonparty Witnesses and whether the network defendants could be considered the prevailing party are factors to be considered in determining *if* the Nonparty Witnesses should be reimbursed or are only to be considered in determining if the government must also pay some of the Nonparty Witnesses' costs. The Ninth Circuit noted that these two factors were to be considered "in addition" to the factors already discussed above. *See* 666 F.2d at 372 n. 10.

The Nonparty Witnesses did not meet various deadlines for completion of the document production. This Court extended the deadline on several occasions. Similar problems were caused by the actions of the defendants. Both the defendants and the Nonparty Witnesses vigorously prosecuted and defended their interests in relation to this discovery. The record is replete with problems caused by both defendants and the Nonparty Witnesses. Thus, this factor weighs neither in favor of nor against granting the Nonparty Witnesses' motion for costs.

#### f. *Prevailing Party*

Finally, the United States prevailed in these cases, as it succeeded in requiring the defendants to enter into consent decrees which substantially limited and altered their conduct in relation to prime-time programming. As this Court noted at the time the decrees were entered, the decrees are "consistent with the government's theory of liability as manifested in the complaint." *United States v. National Broadcasting Company, Inc.,* 449 F.Supp. 1127, 1145 (C.D.Cal.1978). Thus, there is no question that defendants did not prevail in this action. Although the defendants did not lose as much as they could have if the action had been litigated, settlement of the action does not make the defendants the prevailing party. It is unclear, however,

how this factor should affect the determination of whether the Nonparty Witnesses should be reimbursed for their costs in complying with defendants' subpoenas.

This Court initially denied the Nonparty Witnesses' motion for costs on the ground that in this case the costs were merely a cost of doing business, *United States v. Farmers and Merchants Bank, supra* at 420, and on the ground that the Nonparty Witnesses were interested parties in this litigation, several of them having dismissed their own antitrust suits against the defendants once the United States commenced these actions. These rationales were flatly rejected by the Ninth Circuit. *See* 666 F.2d at 372. Upon consideration of the factors outlined by the Circuit, discussed above, this Court finds that it would be unreasonable to require the Nonparty Witnesses to bear the entirety of the costs of complying with the defendants' discovery demands. The Court finds, however, that not all of the costs sought by the Nonparty Witnesses can or should be reimbursed.

## V. *The Costs Sought by the Nonparty Witnesses*

### a. *Compensation Paid to Employees Hired Solely for Document Production and Employees of the Nonparty Witnesses Who Worked on the Document Production Instead of Their Regular Duties*

■ In order to comply with the defendants' subpoenas, the Nonparty Witnesses hired and trained in-house lawyers, law clerks, paralegals and office workers solely to produce the documents requested by the defendants. At least 93 such individuals were employed directly by the Nonparty Witnesses, and additional workers were supplied by temporary personnel services. These employees performed various clerical tasks. They conducted tours of facilities to acquaint counsel for defendants with the documents available, reviewed millions of documents gathered from active files and warehouses, analyzed documents to identify materials responsive to the subpoenas,

identified and segregated privileged from nonprivileged materials, prepared logs of documents, transferred documents to defendants' counsel, refiled documents returned by defendants' counsel, had files returned to active files and warehouses, and responded to questions by defendants concerning the documents. The Nonparty Witnesses spent $550,494.29 to compensate these employees for their work on the document production.

In addition to the employees specially hired for the document production, many regular employees of the Nonparty Witnesses devoted substantial portions of their time to the document production. As a result, these employees were unable to perform their regular duties. The Nonparty Witnesses spent $100,044.21 to compensate these employees for their work on the document production. The Nonparty Witnesses will be reimbursed by defendants for both of these costs. The defendants allege that as to regular employees, the Nonparty Witnesses would have to have paid their salary anyway, regardless of the document production. In another context, the Ninth Circuit has held that even though an employer would have to pay an employee's salary regardless of the defendant's conduct, when the employee is being used by defendant, the employer is deprived of the employee's performance of normal duties and is entitled to recover the employee's salary from the defendant. *See Convoy v. Sperry Rand Corp.*, 672 F.2d 781, 785 (9th Cir.1982) (damage action for breach of contract in which plaintiff's employee spent substantial amounts of time supervising repairs to the computer sold by defendant). *See also Fox v. House*, 29 F.Supp. 673, 677 (E.D.Okl.1939) (costs of compensating regular personnel are compensable); *Van Harville v. Johns-Manville Products Corp.*, 31 F.R.Serv.2d 734, 735 n. 2 (S.D. Ala.1981) (costs of employing clerical workers and laborers reimbursable); *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101, 105 n. 2 (S.D.Ohio 1982). The same rationale applies here. Although the Nonparty Witnesses would have paid the salaries of their

regular employees regardless of the document production, the Nonparty Witnesses lost the normal services of these employees as a direct result of the document production. This is an out-of-pocket loss for which the Nonparty Witnesses should be reimbursed. *See Matter of Hawaii*, 88 F.R.D. 518, 520 (D.Haw.1980) (plaintiff required to pay salary of nonparty's employee while employee supervised production of documents to plaintiff). Thus, the Nonparty Witnesses are entitled to recover the costs claimed for specially hired and regular personnel for their time spent on the document production.

### b. *Costs Incurred for Office Equipment Supplied and Transportation Used in the Document Production*

The document production staffs required desks, typewriters, basic office equipment, copying equipment and other office supplies to enable them to work on the document production. These items were purchased, leased or taken from inventory, for use by employees working on the document production. In addition, the Nonparty Witnesses' trucks and laborers were used to transport documents and studio employees between east and west coast offices to coordinate the production of documents. The Nonparty Witnesses spent $105,175.58 for the equipment, supplies and transportation to comply with defendants' subpoenas.

The defendants contend that they should not be required to pay these costs because there is no indication that the supplies were totally consumed or that the equipment is totally depreciated. The defendants also question the cost of some of the supplies, including rubber stamps. Specifically, the defendants question whether rubber stamps cost over $1,000, and if so, whether that cost is reasonable. This Court will not use its time and resources to consider the reasonableness of the price of rubber stamps. Absent some more definite and clearer indication that the claimed costs are unreasonable or totally unnecessary, the Court will accept the costs of equipment and supplies claimed by the Nonparty Wit-

nesses. Hence, the Nonparty Witnesses are entitled to recover the claimed costs for supplies, equipment and transportation. *See Van Harville*, 31 F.R.Serv.2d at 735–36; *Wright v. Jeep Corp.*, 547 F.Supp. 871, 877 (E.D.Mich.1982) (nonparty entitled to be reimbursed for costs of supplying and reproducing documents).

### c. *Cost of Office Space Occupied in Connection With the Production and Necessary Alterations to That Space*

The Nonparty Witnesses also seek reimbursement for the office space occupied during document production and the costs incurred in altering that space for use in document production. The Nonparty Witnesses' document production staffs and the document reviewers representing the defendants required space in which to work. The Nonparty Witnesses supplied space for use by these individuals. The Nonparty Witnesses argue that the premises were occupied at the time of the document production. In most instances, the Nonparty Witnesses converted storage space into space useable for document production. No evidence has been presented however to show that the Nonparty Witnesses incurred any actual out-of-pocket costs or expenses in relation to office space as a result of the document production. There is no evidence that the defendants evicted tenants or rented more space to use for the document production. Thus, there have been no expenses incurred, nor have the Nonparty Witnesses been deprived of anything.

The Nonparty Witnesses cite two cases in which the courts allowed reimbursement for office space costs. In *Koninklijke, etc. v. United Technologies Corp.*, 610 F.2d 1052, 1055–56 (2d Cir.1979), the court held that loss of the *right to use* a vehicle, not the loss of use of the vehicle itself, was compensable. The case, however, was decided under Connecticut and New York law, with the court indicating that a different result would attain under federal law. *Id.* at 1057. Thus, *Koninklijke* is inapposite here. In *Van Harville v. Johns-Man-*

*ville Products Corp.,* 31 Fed.R.Serv.2d 734 (S.D.Ala.1981), the court found that there was evidence that the responding party had actually rented additional space at a local motel to respond to the discovery requests, thereby incurring actual out-of-pocket expenses. This is not the situation here. As noted, the majority of office space was converted from storerooms. This Court will not allow the Nonparty Witnesses to turn the defendants' discovery requests into a money making opportunity of the Nonparty Witnesses. Hence, the Nonparty Witnesses will not be allowed reimbursement for office space "expenses."

The Nonparty Witnesses did incur costs converting the storage rooms and other areas into office space for the document production. These costs included the installation of telephone lines with high voltage wiring to accommodate copying machines. Such alterations were necessary to make the space useable for document production. These costs are out-of-pocket costs that would not have been incurred but for the defendants' discovery requests. Thus, these costs will be reimbursed by defendants. The Court has been given a summary of the costs claimed for office space *and* for the alterations to it. The Nonparty Witnesses are ordered to file a further breakdown of these costs establishing the alteration costs. These alteration costs will be paid by defendants upon order of this Court following receipt of the breakdown.

The defendants have argued that all of these office space and alteration costs were incurred solely because the Nonparty Witnesses refused to allow the documents to leave their premises and control. It was reasonably necessary for the documents to be reviewed on the premises of the Nonparty Witnesses, as the documents included original contracts and materials to which the Nonparty Witnesses needed access in order to run their businesses. The Nonparty Witnesses had a legitimate interest in retaining easy access to such materials and had a legitimate concern that the documents would be more likely to be lost if they were removed from the Nonparty Wit-

nesses' premises. *See SEC v. Arthur Young & Co.,* 584 F.2d 1018, 1033–34 (D.C. Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979). The Nonparty Witnesses will be allowed to recover the alteration costs.

d. *Amounts Paid to Outside Accountants in Connection With Their Services on the Document Production*

The defendants served subpoenas on the outside accountants for each of the Nonparty Witnesses, demanding production of financial information generated by the Nonparty Witnesses. The accountants did not file motions to quash the subpoenas, nor did they seek reimbursement for costs incurred in complying with the subpoenas. The accountants did file objections to the subpoenas, but commenced document production subject to the objections. Many of the documents subpoenaed were the property of the Nonparty Witnesses and contained privileged or confidential information. Before the accountants produced the documents to defendants, they reviewed the documents.

In addition, the subpoenas served on the Nonparty Witnesses required the Nonparty Witnesses to produce documents in the possession of their accountants. After these documents had been produced either by the accountants or from the accountants through the Nonparty Witnesses, the accountants billed the Nonparty Witnesses for their services. The Nonparty Witnesses paid the accountants. The total bills from the accountants, at their hourly rates, exceeded $200,000. The Nonparty Witnesses now seek reimbursement of this cost from defendants.

The Nonparty Witnesses cite two cases in support of their claim for reimbursement for accountants' fees: *SEC v. Arthur Young & Co.,* 584 F.2d 1018, and *Matter of Hawaii Corp.,* 88 F.R.D. 518 (D.Haw.1980). Each of these cases is distinguishable. In *Arthur Young & Co.,* accountants were subpoenaed to produce documents. Production of the material would have cost in

excess of $100,000. 584 F.2d at 1031. The court concluded that the accountants might be able to recover their reasonable costs of production but the court was "unable to rule affirmatively that appellant is entitled to reimbursement." *Id.* at 1034. The court indicated that until the costs were actually incurred, it would be premature to award any given amount simply because the award could exceed the actual final costs. Thus, this case does not stand for the proposition that outside accountants' fees are awardable. More importantly, however, the accountants in *Arthur Young & Co.* were not claiming outside accountants' fees, they were claiming their own actual out-of-pocket costs incurred in complying with the discovery requests. Here, the accountants did not seek their own costs. Rather, they billed the Nonparty Witnesses at their hourly rate. The Nonparty Witnesses now seek reimbursement of the fees paid, not the cost incurred by the accountants. Thus, *Arthur Young & Co.* is clearly distinguishable.

In *Matter of Hawaii,* the court required the party seeking discovery to pay the cost of having one employee from a subpoenaed accounting firm oversee the production of documents. The accountants *who were subpoenaed* sought the *actual costs incurred*—the salary of the employee overseeing the production. In our case, the accountants subpoenaed are not seeking their actual costs. Rather, the *Nonparty Witnesses* are seeking recovery of the accountants' *hourly fees* that the accountants incurred in complying with the defendants' subpoenas.

Because the Nonparty Witnesses are seeking not the actual costs incurred but rather the hourly fees of the accountants, these costs will not be reimbursed. The accountants are free to seek reimbursement of their costs of compliance with the defendants' subpoenas. The problem, however, is that the Nonparty Witnesses have already paid the accountants their hourly fees for the accountants' time in responding to the subpoenas.

The Nonparty Witnesses argue that under the doctrine of subrogation, they paid the accountants and should be subrogated to the rights of the accountants to have these fees reimbursed. A party who pays the debt of another can be subrogated to the rights of the original creditor so long as the party paying the debt acts under some duty or compulsion. *See First National City Bank v. United States,* 548 F.2d 928, 936, 212 Ct.Cl. 357 (1977). A person acting to protect his own interests is acting involuntarily and under compulsion. In addition, the party paying the debt is entitled to subrogation if he believes in good faith that the debt is due, even if it later turns out that they are incorrect as to liability. *See Dampskibsaktieselskabet v. Bellingham Stevedoring Co.,* 457 F.2d 889, 892 (9th Cir.1972). The Nonparty Witnesses claim that they paid the accountants in the good faith belief that the debt was owed, and thus should be able to collect these fees from defendants.

The problem with this argument is that it presupposes that the defendants owed a debt to the accountants, and that once the Nonparty Witnesses paid that debt for the defendants, the Nonparty Witnesses would be subrogated to the rights of the accountants to collect it from defendants. There is simply no basis upon which to make this assumption. It is entirely within the discretion of this Court whether to award the accountants their costs in complying with the subpoenas served on them. *See United States v. International Business Machines Corp.,* 62 F.R.D. 507, 510 (S.D.N.Y.1974). Until this Court makes such a determination, there is no debt belonging to the defendants. The Nonparty Witnesses argue that they had a good faith belief that the accountants' fees were a debt. They could not, however, have assumed that it was a debt belonging to *defendants.* The accountants simply had no rights against the defendants to which the Nonparty Witnesses can now be subrogated.

The Nonparty Witnesses argue that they are entitled to subrogation even if their

estimate of the defendants' liability was incorrect. They rely on *Bellingham Stevedoring,* 457 F.2d at 892, in which the court found that a party could recover payments made in good faith to a likely creditor, and later recover the monies paid from the person *that actually owed the debt. Id.* Here, however, though the Nonparty Witnesses paid the debt in good faith, there is no one who actually owes the debt upon which they can now recover. Hence, the Nonparty Witnesses are not entitled to recover outside accountants' fees incurred by the accountants in responding to the defendants' discovery requests.

The Nonparty Witnesses also claim that they utilized accountants in responding to the subpoenas served on the Nonparty Witnesses. To the extent the Nonparty Witnesses incurred fees in responding to these subpoenas, these fees are recoverable just as are fees for truck drivers and telephone installation. But the Nonparty Witnesses have not submitted any evidence to this Court indicating the breakdown for fees incurred in responding to the defendants' subpoenas, as differentiated from fees their accountants charged for complying with the subpoenas served on the accountants. The Nonparty Witnesses are ordered to submit a breakdown of these accountants' fees. The Court will then order that the defendants pay the accounting fees incurred by the Nonparty Witnesses in responding to the subpoenas served on the Nonparty Witnesses.

### e. Outside Counsel Fees Incurred by Nonparty Witnesses in Responding to Defendants' Discovery Requests

The Nonparty Witnesses retained outside counsel to represent them in reviewing their documents for privilege, confidentiality and otherwise, to represent deponents at depositions, to negotiate protective orders and other matters with counsel for defendants, and to otherwise protect the Nonparty Witnesses' interests. It was necessary for the Nonparty Witnesses to retain counsel in connection with the document production.

The Nonparty Witnesses will not be allowed to recover the costs incurred in retaining outside counsel. The "American Rule" on attorneys' fees is that each party must bear the burden of his own attorneys' fees. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *See also Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 3276, 77 L.Ed.2d 938 (1983). In *Alyeska,* the Court noted first that awards of attorneys' fees for disobedience of a court order or bad faith and oppressive behavior are "assertions of inherent powers in the courts to allow attorneys' fees in particular situations." 421 U.S. at 259, 95 S.Ct. at 1622. The situation here involves neither disobedience of a court order nor bad faith and oppressive behavior. The Court later noted in *Alyeska* that federal courts are without authority to allow counsel fees except in limited circumstances. *Id.* at 260, 95 S.Ct. at 1623. The Nonparty Witnesses admit that there is no statutory authorization for reimbursement of these fees, but argue nonetheless that the Court can award fees when the interests of justice so require. In *Alyeska,* however, the Supreme Court noted that "it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards *are matters for Congress to determine." Id.* at 262, 95 S.Ct. at 1624. Thus, it appears that the Supreme Court has foreclosed the ability of this Court to award fees when the interests of justice so require. *See Writer's Guild of America West, Inc. v. F.C.C.,* 423 F.Supp. 1064, 1160 (C.D.Cal.1976), *vacated on other grounds,* 609 F.2d 355 (9th Cir.1979) ("it appears that the Supreme Court has foreclosed federal equity courts from awarding attorneys' fees when they determine that the interests of justice so require," *citing Alyeska* ).

The Nonparty Witnesses also argue that the American Rule prohibiting the award of attorneys' fees does not apply where Nonparty Witnesses are involved because the rationale behind the rule does not apply to them. The rationale behind the American Rule is that persons ought not to be

discouraged from bringing or defending suits on the ground that if they lose they will have to pay the opposing party's counsel fees. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). Although this rationale applies to parties, an equally compelling rationale in limiting attorneys' fees reimbursement is that defendants should not be forced to bear the risk of losing an antitrust action because the penalty for seeking the information they need to defend against it includes the fees of the responding party in seeking outside counsel.

The Nonparty Witnesses cite two cases in support of their claim for outside counsel fees. In *Clark v. Geiger*, 31 F.R.D. 268 (E.D.Pa.1962), the court ordered a third party plaintiff to pay a third party defendant the *expenses and fees* of a psychiatrist to attend a deposition. The court further ordered that the third party defendants pay the *expenses* of counsel attending the deposition. *Id.* at 271. Thus, it is unclear if the court ordered that the third party defendants pay attorneys' *fees* in addition to expenses. In *American Standard, Inc. v. Bendix Corp.*, 71 F.R.D. 443 (W.D.Mo. 1976), the court ordered the defendant to pay plaintiff one half of the expenses incurred in interviewing and preparing transcripts of four nonparty witnesses. It is unclear if these expenses included outside attorneys' fees. Even if they did, in *American Standard,* the defendant directly benefited from the work of the plaintiff's attorneys. *Id.* at 448. Such is not the case here. It cannot be said that the defendants benefited from the work of the Nonparty Witnesses' outside counsel. *See also In re Coordinated Pretrial Proceedings, Etc.*, 669 F.2d 620, 624 n. 3 (10th Cir.1982) (court should place burden of discovery costs on party benefiting from it). Finally, the Nonparty Witnesses argue that this Court should award attorneys' fees under Fed.R. Civ.P. 26(c), which provides that the court may make any order to protect a party. Given the American Rule on attorneys' fees awards and the apparent unavailability of exceptions to it, *see Alyeska*, 421 U.S. at 262, 95 S.Ct. at 1624, this Court will not award reimbursement for outside counsel fees under Rule 26(c).

## VI. *Evidence of the Nonparty Witnesses' Costs*

The evidence submitted by the Nonparty Witnesses consists of almost 800 pages of affidavits and exhibits. The evidence includes attorney time sheets, employee time cards, invoices, cancelled checks, salary records of employees, contemporaneous computerized business records, and many other kinds of material. Defendants have conceded the admissibility of this evidence.

The evidence submitted by the Nonparty Witnesses documents each transaction for which costs are claimed and is reliable, establishing that such costs were incurred in connection with the Nonparty Witnesses' response to defendants' subpoenas. At oral argument, counsel for defendants represented to the Court that they wished no further discovery, a position that is contrary to that taken in their written papers. In any event, the Court finds that there has been sufficient time allowed for the parties to conduct discovery; thus, the Court will allow no further discovery. Moreover, an evidentiary hearing is unnecessary. The affidavits and other evidence submitted by the Nonparty Witnesses provide a sufficient basis for this Court to determine the appropriate amount of costs, with the exception of office alteration costs and accountants' fees incurred by the Nonparty Witnesses in responding to the subpoenas served on them. The Court has already ordered that further cost breakdowns be submitted for these items.

## VII. *Assessment of Nonparty Expenses to United States Government*

The defendants argue that because the government "rode the defendants' coattails" in discovery, allegedly avoiding substantial costs it would have otherwise incurred, it would be inequitable to impose all the costs of such discovery on the defendants. They contend that the Court has

discretionary authority to award reimbursement against the government under Rules 45(b) and 26(c) of the Federal Rules of Civil Procedure. The government argues that it would be neither lawful nor appropriate to assess any portion of the Nonparty Witnesses' discovery expenses against the government. This Court agrees, and thus declines to assess any portion of the reimbursement of costs to the government.

■■■■■ The United States enjoys sovereign immunity from the litigation expenses of other parties, except to the extent that such immunity has been explicitly waived by law. *See Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1132 (9th Cir.1974); *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 20–21, 47 S.Ct. 1, 8, 71 L.Ed. 131 (1927). The discovery rules cited by the defendants furnish no legal authority for waiving such immunity and assessing any portion of the discovery costs against the government, which actually opposed the document production sought by defendants. *See EEOC v. Kenosha Unified School Dist. No. 1*, 620 F.2d 1220, 1226–27 (7th Cir.1981); *Commodity Futures Trading Commission v. Rosenthal & Co.*, 537 F.Supp. 1094, 1098 (N.D.Ill. 1982); *Norman v. United States*, 74 F.R.D. 637, 639 (D.Del.1977). *See also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983).

Moreover, even if sovereign immunity were not a legal bar to the assessment of discovery costs to the government, it would not be appropriate for the Court to allow the networks, as non-prevailing parties, to shift their liability for litigation expenses to the opposing party. *See Ruckelshaus v. Sierra Club*, 103 S.Ct. at 3276–77. For these reasons, the Court finds that the United States will not be required to bear the burden of any of the costs reimbursed by the defendants.

## VII. *Conclusion*

For the reasons noted above, the Nonparty Witnesses are entitled to reimbursement for a portion of the costs incurred. These costs are the costs of hiring additional personnel, the costs of paying permanent personnel for their work on the document production, the costs of supplies, equipment and transportation, the costs incurred in altering space to make it useable for office space, and the costs of accountants' fees incurred by the Nonparty Witnesses in complying with the subpoenas served directly on them. Costs for office space, outside accountants' fees incurred by the accountants in responding to subpoenas served on them, and outside counsel fees will not be ordered reimbursed by defendants. In addition, the government will not be required to bear the burden of any of the costs reimbursed by defendants.

The Nonparty Witnesses are ordered to file with this Court, within thirty days of the entry of judgment, a breakdown of the costs incurred for alteration of office space and for payment of fees to accountants used to respond to the defendants' requests of the Nonparty Witnesses themselves.

The Nonparty Witnesses are further ordered to submit an order for reimbursement in accordance with the costs allowed by this Court. Upon receipt of the above documentation of costs, an order will be signed by the Court.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

The Clerk shall send, by United States mail, a copy of this Memorandum of Decision and Order to counsel for the parties.